ROBERT H. ROESCH, AS CLERK OF THE CIRCUIT COURT OF MANATEE COUNTY, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *ex rel.* A. F. WYMAN, *Defendant in Error*.

The provisions of our statutes require the owner of land that has been sold for the non-payment of the special assessment for drain or ditch purposes to pay interest thereon at the rate of twenty-five per cent per annum for the first year and eight per cent per annum thereafter upon redemption of the land from the sale thereof.

This case was decided by Division B.

Writ of error to the Circuit Court for Manatee County.

The facts in the case are stated in the opinion of the court.

*Chas. T. Curry*, and *O. T. Stanford*, for Plaintiff in Error;

*Singletary & Reeves*, for Defendant in Error.

PARKHILL, J.—By this proceeding in mandamus the relator, Wyman, seeks to compel the Clerk of the Circuit Court for Manatee County to accept a certain sum of money tendered to the Clerk in redemption of land sold for taxes. The lands of relator described in the petition were assessed in 1906 for State and County taxes and also for a special drainage tax under provisions of section 955 of the General Statutes of 1906. The assessment not having been paid, the land was sold in 1907 by the tax collector and a tax sale certificate issued to the State including both the general assessment of taxes for State and County purposes and the special assessment for ditch purposes. In 1910 the relator tendered to the respondent as Clerk of the Circuit Court a sum of money equal to the general assessment of taxes for State and County purposes and the accrued taxes for subsequent years, together with interest thereon at the rate of 25 per cent. for the first two years and 8 per cent. thereafter as required by law, also the amount due as special taxes for ditch purposes with the interest thereon of 6 per cent. per annum.

The Clerk refused to accept said amount in redemption of the land sold for taxes, claiming that the relator should pay 25 per cent. interest for the first two years and 8 per cent. thereafter on the ditch assessment instead of 6 per cent. therefor as tendered by relator.

The court issued an alternative writ which was answered by the respondent, and upon a hearing made the alternative writ peremptory and respondent appeals.

The petition shows that relator owns the land described therein; that during the year 1904 a public drain was established in pursuance of the provisions of Chapter 5035 Acts of 1901, now known as chapter XVI of the General Statutes of 1906; that among other lands duly assessed for the construction of such drain was the land described in

the petition and belonging to relator; that upon said lands of relator there was assessed the sum of $155.00, for the expense of constructing said drain to be levied by the tax assesor in annual installments of one, two, three and four years; that relator paid all the taxes assessed against his said property up to and including the year 1907, but failed to pay the taxes and assessments thereon for the year 1907, which were as follows:

| | |
|---|---:|
| For State Taxes | $ 3.00 |
| For County Taxes | 7.60 |
| For Special School Tax | 1.20 |
| For Cedar Hammock Drain | 195.04 |
| Total | $206.84 |

Upon failure of relator to pay the taxes and special assessment on his land for the year 1907, the same was sold, a tax certificate therefor was issued to the State Treasurer for $217.63, which certificate is held by respondent herein as Clerk of the Circuit Court, subject to redemption as provided by law.

No question is raised here as to the validity of the special assessment for the Cedar Hammock Drain. The contention of relator is that he is not liable to a penalty of interest at 25 per cent per annum for the first two years and 8 per cent thereafter, but is liable only for the amount of the special assessment with 6 per cent per annum together with costs incident to the sale and redemption.

The provisions of section 955 of the General Statutes of 1906, provide that the special assessment for drain or ditch purposes shall be collected *by the tax collector in like manner as other taxes are collected,* and made a special fund for the cancellation or redemption of the

indebtedness incurred in the construction of said ditch, canal or drain.

Section 956 of the General Statutes of 1906 provides that when such assessment has been ordered by the county commissioners they may issue *script* bearing six per cent interest upon which they may borrow money with which to pay for the work aforesaid and such script shall be made a lien upon the lands assessed until such script shall be redeemed and the indebtedness fully satisfied. This script bears 6 per cent. interest, but this section does not mean that the special assessment or tax for drain purposes when unpaid shall bear 6 per cent. interest. The intention is that the taxes levied as a special assessment for drain purposes are to be collected and made a special fund for the payment of the script and interest thereon at six per cent per annum.

There does not seem to be any provision in Chapter XVI of the General Statutes for the collection of any interest on the unpaid special drain assessment when the owner of the land redeems it from tax sale, unless by section 955 of the General Statutes of 1906 providing that said assessment shall be collected by the tax collector in like manner as other taxes are collected, interest at the rate of twenty-five per cent. per annum for the first year and eight per cent. per annum thereafter from the date of sale as provided in section 570 of the General Statutes of 1906 must be paid where any person owning land sold for taxes redeems the same after such sale, and other provisions of the general tax laws to be mentioned hereafter.

The special drain assessment shall be collected by the tax collector in like manner as other taxes are collected. The tax collector gets his authority to collect delinquent taxes from a warrant under the hand of the assessor annexed to the assessment roll. This warrant (Section 535

of the General Statutes of 1906) commands the tax collector to collect the taxes set down in the roll by levy and sale of the lands so assessed and to pay to the county treasurer all sums collected for county taxes, district school taxes *and other special taxes*. The assessment for drain purposes is a special tax. The collector is authorized by Section 558, General Statutes of 1906, to advertise and sell real estate for unpaid taxes, including of course the unpaid special taxes or assessments.

The tax sale certificate sets forth the sum for which the real estate was sold. This sum includes of course the special taxes levied for drain purposes. Then Section 570 provides that any person owning such land sold for taxes may redeem the same after such sale by paying the Clerk of the Circuit Court the *face of the certificate of sale* with interest thereon at the rate of twenty-five per cent. per annum for the first year, and eight per cent per annum thereafter.

These provisions would seem to require the owner of real estate sold for taxes, whether for general county purposes or special drain purposes to pay interest at the rate of twenty-five per cent. per annum for the first year and eight per cent. per annum thereafter when he redeems his land from tax sale.

The case of Jackson Fire Clay, Sewer Pipe & Tile Co. v. Snyder 93 Mich. 325, 53 N. W. Rep. 359, is not in point. That case holds that the provisions of the drain law of 1885, adopting the provisions of the general tax law relating to the collection of taxes, is not to be construed as including the provision of the latter law relating to the interest charge. The drain law expressly provided that taxes levied for construction of any drain and not collected shall bear seven per cent. interest, and of course that rate of interest prevailed over the rate of one per

cent. per month on other taxes as provided by the general tax law.   The provisions of our drain law fixes no rate of interest on taxes assessed but not collected for drain purposes.   Moreover, the rate of interest prescribed by the Michigan Statutes seem to run against taxes levied and paid before sale, whereas the interest collectable under our statute is in the nature of a penalty for a failure to pay the tax before sale and this drain tax goes with other taxes uncollected into the tax certificate, and the only method provided for redemption of lands sold for non-payment of any tax is the payment of the face of the certificate of sale with interest at the rate of 25 per cent. per annum for the first year, and 8 per cent. per annum thereafter.

The provisions of the tax law considered in Murphy v. People, 120 Ill. 234, 11 N. E. Rep. 202, are not like the statutes that control the instant case.   Neither of the sec- tions of Illinois Statute, in terms, or by implication, au- thorized, the collection of interest for non-payment of a special assessment, as stated by the court, whereas not only does the provisions of our drain law declare that the said assessment shall be collected by the tax collector in like manner as other taxes are collected (which might be said to refer to the course to be pursued in the collection of the tax), but Section 529 of the General Statutes of 1906, being the general tax law, authorizes and requires the tax assessor to calculate and carry out in separate columns prepared for that purpose *in the assessment roll*. not only the total amount of State taxes and the total amount of county taxes, and the total amount of school district, *but the total amount of other special taxes*, set- ting opposite to the aggregate sum set down as the value of real and personal estate, the respective sums assessed as taxes thereon in dollars and cents.   Then Section 535,

General Statutes of 1906, requires, as we have seen, the collector to collect the taxes set down in each roll opposite each name or parcel of land therein described, and in case the taxes so imposed are not paid at the time required by law, the collector must collect the same by levy and sale of the goods and chattels and lands, and pay the county treasurer all sums collected for county purposes, district school taxes *and other special taxes*. When the land is sold for the non-payment of all these taxes, including special taxes, the purchaser is given a tax sale certificate to the effect that, at a sale of lands for taxes, the collector sold the land described for a certain sum of money, said sum being the amount due for unpaid taxes, which of course includes the amount due for all unpaid taxes, including the sum imposed for special taxes. Then follows in our statute the only provision whereby the owner of the land sold for taxes may redeem the same, by paying the Clerk of the Circuit Court "the face of the certificate of sale," which of course includes the amount due for special taxes, and interest thereon at the rate of 25 per cent. per annum for the first year and 8 per cent per annum thereafter.

Counsel raise the inquiry, "To whom will this penalty go, and why require a penalty when the script can be redeemed without this penalty fund?" If a citizen buy the land at the tax sale, the interest penalty goes to him when the land is redeemed, or it goes in like manner to the State if the land is certified to the State. The penalty in the nature of interest is not imposed to be used to redeem or pay the script. It is imposed as a means to induce or compel the owner of the land to pay his taxes, such taxes being used to redeem or pay the script.

For the reasons stated, the court erred in making the

alternative writ of mandamus peremptory, and the judgment is reversed.

TAYLOR and HOCKER, J. J., concur.

WHITFIELD, C. J., and SHACKLEFORD and COCKRELL, J. J., concur in the opinion.