HARRY W. HECHT, and TRUSTEES I. I. FUND, v. F. C. SHAW, *et ux*.

151 So. 333.
Opinion Filed Nov. 16, 1933.

*Ira C. Haycock, Cary D. Landis,* Attorney General, and *Marvin C. McIntosh,* Assistant, for Appellants;

*Richard H. Hunt,* for Appellee.

LONG, Circuit Judge.—In substance the Bill alleges the levy of a maintenance tax under Chapter 8412, Acts of 1921, for the year 1927, and sale of the property by Trustees of the Internal Improvement Fund, of the value of some ten thousand dollars for the failure to pay this tax amounting in the aggregate to less than ten dollars. Deed was executed by the Trustees to the purchaser, Hecht, and thereafter suit in ejectment was instituted by him. Appellees, complainant below, filed their bill praying for restraining order, temporary and perpetual, against the prosecution of the common law action, and that the instruments of conveyance executed by the Internal Improvement Fund be declared null and void.

There are a number of assignments of error from which one question arises to be decided by this Court, and that is, has there been a substantial compliance with the law in this case so that the deeds executed by the Trustees, convey a fee simple title to Appellant, Hecht. From this question

arise three propositions of law to be decided. First, is Chapter 8412, Acts of 1921, sufficient as an adoptive statute to authorize the Trustees of the Internal Improvement Fund to sell the land in controversy under Sections 1546 and 1547. Second, the sufficiency of the notice of sale. Third, the constitutionality of the Acts.

Chapter 8412 (Sec. 1594 C. G. L) contains this provision:

"In all other respects the law governing the assessment, collection and sale of lands for the non-payment of Everglades Drainage District taxes shall be and is hereby made applicable to the benefit tax as herein provided for."

There are many instances where parts of other statutes have been adopted, as a study of the taxation law will reveal. In this instance it is clear that the Legislature intended to provide for the sale by the tax collector with reference to this tax, and that no discrimination should be made in the collection of taxes due between the acreage tax and the maintenance tax.

"It is a general rule that, when a statute adopts a part or all of another statute, domestic or foreign, general or local, by a specific and descriptive reference thereto, the adoption takes the statute as it exists at that time. The subsequent amendment or repeal of the adopted statute has no effect on the adopting statute, unless it is also repealed expressly or by necessary implication. But when the adopting statute makes no reference to any particular statute or part of statute by its title or otherwise, but refers to the law generally which governs a particular subject, the reference in such a case includes, not only the law in force at the date of the adopting Act, but also all subsequent laws on the particular subject referred to, so far at least as they are consistent with the purpose of the adopting

Act. When a prior Act is incorporated in a subsequent one in terms or by relation, the repeal of the former leaves the latter in force, unless also repealed expressly or by necessary implication."

Williams, et al., v. State ex rel. Newberger, 100 Fla. 1267, 125 So. 358. Roesch v. State ex rel. Wyman, 62 Fla. 263, 56 So. 562.

"A statute may adopt a part or all of another statute by specific and descriptive reference thereto, and the effect is the same as if the statute or the part thereof adopted had been written into the adopted statute."

36 Cyc. 1152.

The notice given by the Trustees of the Internal Improvement Fund is in substance (omitting the description of other lands) as follows: Notice is given that under provisions of Sec. 1546, Compiled General Laws, the Trustees of the Internal Improvement Fund will, beginning at 10 o'clock A. M., April 8, 1931, at the Capitol in Tallahassee, offer for sale, subject to redemption prior to date of sale, the following described land, title to which is vested in said Trustees by virtue of Everglades Drainage District tax certificates, all in Dade County, Florida:

Lot 20 in block one, Section B, Coral Gables S/D P. B. 5. 11. Sections 7 and 8-54-41. Terms cash. Redemption will be for the amount of Everglades Drainage District taxes, together with interest, penalties and costs.

The notice is silent as to any description of assessment by certificate number, year of assessment, year of tax sale or otherwise. Counsel contends that because the title had passed to the Trustees that it was not necessary for the notice to contain these requirements. He overlooks the fact that the right of redemption still remained in the Ap-

pellees, and that the very purpose of the notice was the opportunity to redeem.

The notice recites that the Trustees will offer for sale, subject to redemption, the following lands—title to which is vested in said Trustees by virtue of Everglades Drainage District tax certificates; that redemption will be for the amount of Everglades Drainage District taxes.

There are two kinds of taxes imposed on the lands of the Everglades Drainage District—one is an acreage tax imposed by authority of Chapter 6456, Acts of 1913, as amended by Section 1534, Compiled General Laws, and until the Act of 1921 was the only tax with which these lands were burdened, and this tax was recognized as Everglades Drainage District tax. The other is known as a maintenance tax, imposed by authority of Chapter 8412, Acts of 1921, which adopts parts of the law applicable to the Everglades Drainage District tax.

"In all other respects the law governing the assessment, collection and sale of lands for the non-payment of Everglades Drainage District taxes, shall be and is hereby made applicable to the benefit tax as herein provided."

The lands involved are located, according to the notice, in Sections 7 and 8, Township 54, Range 41 East, and are, under Section 1534, Compiled General Laws, exempt from the acreage or Everglades Drainage tax, but are subject to the maintenance tax. It is true that both the acreage tax and the maintenance tax come under the head of Everglades Drainage tax, but we are dealing with the sufficiency of a notice and with a statute that must be construed strictly, and a distinction between the tax having been recognized by the adopting statute, the notice is misleading, and, therefore, insufficient.

The Court having held the notice insufficient, it is un-

necessary to discuss the constitutionality of the statute—suffice it to say that this question has been many times presented to this Court to test the validity of this legislation and in every instance the Court has sustained the Acts.

Banerman v. Catts, 80 Fla. 170, 85 So. 336.

Lainhart v. Catts, 73 Fla. 735, 75 So. 47.

Forbes Pioneer Boat Line v. Everglades Drainage District, 77 Fla. 742, 82 So. 346.

Under the authority of San Sebastian Development Corporation v. Couch we are of the opinion that the Chancellor erred in taxing the costs against the Appellant.

It Is 'Ordered that the decree of the court be affirmed, except as to the taxing of the costs, and that the cause be remanded with directions to tax the costs againt the Appellees.

Campbell, Circuit Judge, concurs.

Whitfield, Ellis and Brown, J. J., and John U. Bird, Circuit Judge, concur in the conclusion.

Davis, C. J., and Terrell and Buford, J. J., disqualified.

Whitfield, J. (concurring).—In levying State and county ad valorem taxes the statutes fix the millage levies and county tax assessors ascertain the descriptions of the lands upon which the taxes are levied.

In levying acreage or *ad valorem* taxes in the Everglades Drainage District for district taxation the statutes not only fix the rate of taxation but also describe the lands upon which the taxes are levied. This gives the owners of the lands in the district statutory notice of the levies made under the statute upon *lands described in the statute*.

The statutory provisions for advertising lands to be sold for non-payment of taxes, for tax sales, for issuing tax sale certificates and for redeeming lands sold for non-payment of Everglades Drainage District taxes by taking up

the tax sale certificates within two years from the date of the sales, are similar to the provisions for tax sales and redemptions for non-payment of State and county taxes. After the two-year period for redemption expires, the title to the lands becomes vested in the State or in the district, which title is evidenced by the tax sale certificates held by or for the State or the district. After the two-year period of redemption, lands sold for non-payment of State and county taxes are redeemed by taking up the outstanding tax sale certificates upon making payments as required by the statutes. After the expiration of the two-year redemption period, redemptions of lands from sales for Everglades Drainage District taxes, where the tax sale certificates are held by or for the district, are made by the payment of the amounts required by the statute and the issuance of a quit claim deed by the Trustees of the Internal Improvement Fund.

Where tax sale certificates for unpaid State and county taxes or Everglades Drainage District taxes are held by private parties, they may after the redemption period of two years from the date of the tax sale certificate has expired, acquire tax deeds, to be issued by the clerk of the circuit court upon compliance with the terms of the statutes, including the publication and mailing of the notices as prescribed by the statute so that the owner or claimant of the land may have constructive if not actual notice of the application for a tax deed and have an opportunity to redeem the land at any time before a tax deed to the land is issued by the clerk of the circuit court.

Title to lands covered by State and county tax sale certificates held by the State vests in the State two years after the date of the tax sale certificates, but such lands are not sold by the State under existing laws except by the sale of the tax sale certificates upon which tax deeds may be

issued by the clerk of the circuit court upon compliance with the statutes, and the owner or claimant does not redeem before tax deed issues as stated above. The statute vests title to the lands in the State or in the district on the tax sale certificates; but title is not so vested in a private owner of a tax sale certificate. He gets title through a deed issued under the statutes.

Where tax sale certificates covering unpaid Everglades Drainage District taxes are held by the Trustees of the Internal Improvement Fund for the district, after two years from the date of such certificates "title to the lands shall immediately vest in the said Trustees, subject to redemption by the owner as hereinafter provided, without the issuing of any deed as provided in other cases, and the certificates held by the said Trustees, shall be evidence of the title of the said Trustees as to lands embraced in such certificates. After title shall have become vested in the Trustees as above the said Trustees may sell and convey the said lands by deed at the best price obtainable therefor, provided such price shall not be less than the amount of all drainage taxes upon the said lands which are due thereon pursuant to the provisions of this article, together with all interest, penalties and costs: Provided, that no such lands shall be sold by the said Trustees until four weeks' notice of the intention of the said Trustees to make such sale shall have been published once each week in a newspaper published in the county in which such lands lie, and if there be no newspaper published in such county then such notice shall be published as aforesaid in a newspaper published in Jacksonville, Florida. The Trustees may reject any and all bids offered for such lands: Provided, however, that the bona fide owner of the lands embraced in any such tax sale certificate, and who was such owner at the time of

such tax sale, or the bona fide successor in title to such owner, shall at any time prior to the day of the sale of such lands, have the right to redeem the same by paying the amount expressed in the face of such tax sale certificate together with interest thereon at the rate of two per cent. per month for the first year and eight per cent. per annum thereafter and paying the annual taxes for each subsequent year together with interest thereon at the rate of eight per cent. per annum." Section 1546 (1175), Compiled General Laws, 1927.

The rights given the owner of lands to redeem at any time prior to the day of the sale of the lands which as required by the statute have been advertised for sale by the Trustees, does not include a right to any other notice than the notice of the intended sale by the Trustees.

The statute above quoted authorizing the Trustees to sell lands that have been bid off for the Trustees at a tax sale for non-payment of district taxes, the title to which has become vested in the Trustees after the two-year redemption period has expired, requires notice of such proposed sale to be published as provided by the statute. This notice being of intention of the Trustees *to sell* is not required to be similar to the statutory notice of intention of a prospective *purchaser to apply for a tax deed* to be issued upon tax sale certificates purchased by the applicant for the tax deed. In one case the notice is of an application by a private party for a tax deed *to acquire title* to the lands; in the other the notice is of a sale to be made by the Trustees for the district *having title* to the lands. In the latter case the notice is to inform prospective purchasers of the land of the intended sale and to give former owners of the land an opportunity to redeem before the day of the advertised sale. When a sale is made as advertised the pur-

chaser receives a deed to the land executed by the Trustees as required by the statutes and the title conveyed is such as is stated in the statute.

The statute provides "no such deeds given by the Trustees shall be set aside or deemed ineffectual to convey title because of any defect of description of the premises in the * * * advertisement of sale or certificate of sale or tax deed or other document, notice or paper prescribed herein, provided the description given is sufficient to describe the premises with reasonable certainty * * * or because of any other matter or thing, whether hereinafter expressly enumerated or not, save and except that the premises sold were not liable to the tax or that the tax thereon had been paid at the date of sale."

The statutory requirement that "no such lands shall be sold * * * until four weeks' notice of the intention of the said Trustees to make such sale shall have been published once each week in a newspaper published in the county in which such lands lie," is a legally sufficient notice if the description of the lands is reasonably certain so as to give owners an opportunity to exercise their right to redeem before the lands are sold by the Trustees, the title having vested in the Trustees by virtue of the statute when the lands were not redeemed before the two-year period of redemption expired.

The statutory assessment and the advertisement for sale for non-payment of the taxes levied and assessed, constitute due process of law in giving notice of the levy of the tax; and the law afforded notice that if the taxes were not paid and the tax sale certificates were not redeemed within the time fixed by the statute, the title to the lands would by operation of law become vested in the Trustees for the district with a right in the Trustees to sell the lands after

four weeks published notice of an intended sale, subject to the right of the owner to redeem at any time before the day of the sale; and if in the published notice of such intended sale of the lands "the description given is sufficient to describe the premises with reasonable certainty," the notice is legally sufficient to afford the owner an opportunity to exercise the right to redeem given by the statute after the title had vested in the Trustees for the district, the owner having already lost his property rights in the lands by failing to pay taxes duly levied and by failing to redeem the lands after they were bid off for the Trustees at the sale for non-payment of the taxes.

But in this case the published notice of intended sale of lands by the Trustees does not describe the lands with reasonable certainty so as to advise the owner that his lands were included in the published notice of intended sales by the Trustees under the statute. The decree appealed from should be affirmed on this ground.

ELLIS, J., and BROWN, J., and JOHN U. BIRD, Circuit Judge, concur.

CAMPBELL, Circuit Judge.—The appellees as complainants in the court below filed a bill of equity against the appellants, Harry E. Hecht, and the Trustees of the Internal Improvement Fund of the State of Florida, as respondents. The relief sought by the complainants was the cancellation of two certain deeds called by the complainants "tax deeds," which were alleged to have been executed and delivered by the Trustees of the Internal Improvement Fund of the State of Florida, to the respondent, Harry W. Hecht, conveying fee simple title to the lands therein described; to certain of which described land, the complainants claimed fee simple title. The bill of complaint also prays for an order restraining and enjoining

the respondent, Harry W. Hecht, from prosecuting an action of ejectment instituted by him against the complainant, for the possession of such land.

The bill of complaint as amended, alleges in substance, the ownership of, fee simple title to, and the possession by the complainant, of certain of the property embraced in the alleged "tax deeds," held by Harry W. Hecht, and particularly described as follows, to-wit: Lot 20, Block 1 of Section B, Coral Gables, a subdivision of Dade County, Florida, according to the plat thereof recorded in Plat Book 5, page 111, in the office of the Clerk of the Circuit Court of Dade County, Florida, and of the alleged value of $10,000.00; that the same was being used and occupied by the complainants, as a home; that under the provisions of Chapter 8412, Laws of Florida, Acts of 1921, there was levied and assessed against the described real estate, a "maintenance tax" for the year 1927, amounting to the sum of sixty-three cents; that the said maintenace tax became delinquent, and the land was sold by the tax collector of Dade County, Florida, for the non-payment of such tax; that at the tax sale, the tax collector, bid off said land for the Trustees of the Internal Improvement Fund of the State of Florida, for the amount of the maintenance tax, under the provision of Section 1171, Revised General Statutes of Florida, Section 1541, Compiled General Laws; that on April 8, 1931, the Trustees of the Internal Improvement Fund of Florida, after having held the tax sale certificate, issued by the tax collector, for such delinquent "maintenance tax" for over two years, sold the said land described in the bill of complaint as amended alleged to be owned by complainants, together with other lands, to the respondent, Harry W. Hecht, executing and delivering to said Hecht two deeds therefor, copies of which are attached to the bill of complaint.

It is further in substance alleged, that for various reasons set forth in the bill of complaint as amended, the said deed and each of them are invalid and void and therefore ineffectual to convey title to the respondent, Hecht. These allegations of the bill of complaint as amended, attack the sufficiency of the provisions of Chapter 8412, Laws of Florida, Acts of 1921, to authorize the sale and conveyance of the land by the Trustees of the Internal Improvement Fund of the State of Florida; and also the sufficiency of the notice published by the said Trustees prior to the alleged sale.

The complainants tendered payment of the face of the tax sale certificate sixty-three cents together with interest penalties and charges, together with all subsequent omitted taxes and interest thereon. Exceptions to the bill of complaint and the amendment thereto, were filed by each of the respondents. General and special demurrer to the bill as amended, were likewise filed by the respective respondents. The court below sustained certain of the exceptions to the bill, and overruled others. The respective general and special demurrers were all overruled.

Upon the filing of answers by the respective respondents, the cause was referred to a master to take the testimony on the issues, and to report his findings of law and fact. The master filed his report and the respondents filed exceptions to certain of his findings. Upon final hearing these exceptions were overruled by the chancellor. Final decree was then rendered by the court below, finding the equities with the complainants, and granting them the full relief prayed for in their bill of complaint as amended, upon the complainants reimbursing the respondent, Hecht, for the amount of tax and interest penalties and charges together with all subsequent omitted taxes. From this

decree the respondents appealed, and have assigned error. There are several grounds of error set forth in the assignment of errors.

The principal propositions, or questions raised by the several grounds of error, are succinctly epitomized by the counsel for both appellants and appellees, as follows, to-wit:

"First. Are the Trustees of the Internal Improvement Fund of Florida, authorized to sell and issue deeds to lands within the Everglades Drainage District, for the failure of the owner to pay the *ad valorem* maintenance tax provided for by Chapter 8412, Laws of Florida, Acts of 1921? And

"Second. If the Trustees of the Internal Improvement Fund, are authorized to sell and to issue deeds, to lands within the Everglades Drainage District on account of the failure of the owner to pay the *ad valorem* maintenance tax provided for by Chapter 8412, Sessions Laws of 1921, has there been a substantial compliance with the law in the instant case, and do the deeds so issued by the said master convey the fee simple title to the real estate involved, to the appellant?"

The master, in his findings of law and fact, found that the first proposition or question stated above, should be answered in the negative. The court below in overruling the exceptions to this portion of the report, sustained such findings of the master. One of the grounds of the assignment of errors challenges this ruling of the court below.

Chapter 8412, Laws of Florida, Acts of 1921, authorizes and provides for the levy, assessment and collection of an annual "maintenance" on all real and personal property within the Everglades Drainage District of Florida. Under Section One of the Act, a tax of one mill on each dollar of valuation of all real, personal and mixed property in

the said district, including land held by the Trustees of the Internal Improvement Fund of the State of Florida, is levied.

In Section 2 of the Act, provision is made for the method, to be used in valuing for such taxation, the property in the Drainage District and the listing, by the Trustees of the Internal Improvement Fund, of all lands held by them, for such taxation. The said list so made by the Trustees to be filed, as provided for the filing of the list of lands for acreage tax in Section 1167, Revised General Statutes of Florida.

In Section 3 of the Act, provision is made, requiring the tax assessor of each of the several counties embraced in whole or in part within the Everglades Drainage District, to·receive the certified valuations of *State lands,* and to enter the same upon the tax rolls of their respective counties, the said valuation to be the basis of the benefit assessment provided for in the Act.

The only provision made in Chapter 8412, Acts of 1921, governing the collection on the one mill "maintenance tax" is found in Section 3, the section of the Act setting forth the duties of, tax assessors, regarding the entering of the lists of *State land* on the tax rolls at the values fixed and certified by the Trustees of the Internal Improvement Fund. The provision regarding the collection of such taxes is the concluding portion of Section three, and is in the following language:

"In all other respects the law governing the assessment, collection, and sale of lands for non-payment of Everglades Drainage District taxes shall be and is hereby made applicable to the benefit tax as herein provided for."

The appellants contend that the above quoted provision of Section 3, Chapter 8412, authorizes the procedure provided for in Section 1175, Revised General Statutes of

Florida, as amended by Chapter 10024, Laws of Florida, Acts of 1925 (Section 1546, Compiled General Laws of Florida), governing the sale by the tax collector of property sold for the non-payment of the one mill "maintenance tax;" also the bidding in of such property by the tax collector, for the Trustees of the Internal Improvement Fund, when no other bids are made for such lands.

Section 1175, Revised General Statutes of Florida, as amended by Chapter 10024, Laws of Florida, Acts of 1925, Section 1546, Compiled General Laws of Florida, provides, that when the tax collector at a tax sale for delinquent drainage tax for the Everglades Drainage District of Florida, under Section 1171, Revised General Statutes of Florida, bids in property for the Trustees of the Internal Improvement Fund, he shall issue tax sale certificates for such lands as of the date of the sale to said Trustees, and if such lands are not redeemed on or before two years from the date of such certificates, title to the lands shall vest immediately in the Trustees subject to redemption by the owner. The tax sale certificates are made evidence of the title in such Trustees as to the lands described in each. Further provision is made in Section 1175, Revised General Statutes, as amended by Chapter 11024, Laws of Florida, Acts of 1925, as follows:

"After title has become vested in the Trustees as above, the Trustees may sell and convey the said lands by deed at the best price obtainable therefor, *provided* such price shall not be less than the amount of all drainage taxes upon said land which are due thereon pursuant to the provisions of this *Article,* together with interest, penalties and costs. *Provided,* that no such lands shall be sold by the said Trustees until four weeks' notice of the intention of the said Trustees to make such sale, shall have been published once each week in a newspaper published in the county in which

such lands lie, and if there be no newspaper published in such county, then such notice shall be published as aforesaid in a newspaper published in Jacksonville, Florida. * * * Provided, however, that the bona fide owner of the lands embraced in any tax sale certificate, and who was the owner at the time of such tax sale, on the bona fide successor in title to such owner at any time, prior to the day of the sale of such lands, have the right to redeem the same, by paying the amount expressed in the face of such tax sale certificate together with the interest thereon at the rate of two per cent. per month for the first year, and eight per cent. per annum thereafter and paying the annual taxes for each subsequent year with interest at eight per cent. per annum."

It appears from the record in this case, that the land described in the bill of complaint, as the land belonging to the complainant was sold by the tax collector of Dade County, Florida, for the non-payment of the "maintenance tax" provided for in Section One, Chapter 8412, Laws of Florida, Acts of 1921, and that in the making of such sale, and in all his subsequent acts relative thereto, he followed the procedure authorized in the law governing the "collection and sale for non-payment of Everglades Drainage District taxes," as found in Section 1171, Revised General Statutes of Florida, and Section 1175, Revised General Statutes, as amended by Chapter 10024, Laws of Florida, Acts of 1925, quoted from above.

The provisions of Chapter 8412, Laws of Florida, Acts of 1921, regarding the assessment, collection and sale of lands for non-payment on the one mill "maintenance tax" is an "adoption statute." It apparently adopts the law governing the "assessment, collection and sale of lands for the non-payment of Everglades Drainage District taxes,

making it applicable for like purposes regarding the "maintenance tax."

"A statute may adopt a part or all of another statute by a specific and descriptive reference thereto, and the effect is the same as if the statute or part thereof adopted, had been written into the adopting statute." 36 Cyc. 1152.

In the early case of Jones, *et al.,* v. Dexter, Adm'r, *et al.,* 8 Fla. 276, this Court put its approval on statutes adopting provisions of other statutes, and made certain pronouncements regarding the results of such adopted provisions, as follows: "where the provisions of an act are adopted by a *general reference,* the Act will receive a more liberal construction than if originally passed with reference to the particlar object." And, "where a statute has been enacted with special reference to a *particular* subject, and by another statute its provisions are directed in *general terms* to be applied to another subject of an essentially different nature, the adopting statute must be taken to mean that the provisions of the original statute shall be restrained and limited to such only as are applicable and appropriate to the new subject."

See also 25 R. C. L., page 908; Williams v. State *ex rel.* Newberger, 100 Fla. 1569, text.

In the case at bar the appellees contend that the provision of Section 3, Chapter 8412, Laws of Florida, Acts of 1921, reading as follows:

"In all other respects the law governing the assessment, collection and sale of lands for non-payment of Everglades Drainage District taxes, shall be and is hereby made applicable to the benefit tax herein provided for,"

is not sufficient to adopt the procedure provided for in Section 1171, Revised General Statutes, and Section 1175, Revised General Statutes, as amended by Chapter 10024, Laws

of Florida, Acts of 1925, and to make them applicable to enforce the collection and the sale of land for non-payment of the "maintenance tax."

The appellees contend that the above quoted clause of Section 3, of Chapter 8412, Laws of Florida, Acts of 1921, specifies particular provisions of the existing "Drainage Tax Act" which the Legislature intended to incorporate into the Act, and that in no wise can it reasonably be said that the adopting clause is of a *general nature* and inclusive of all the provisions of Section 1546, Compiled General Laws of Florida. Appellees further contend that the adoption clause specifically restricted the Trustees' powers to embrace "the law governing the assessment, collection and sale of lands for the non-payment of Everglades Drainage District taxes," and that the Trustees were without authority to go beyond the "sale for non-payment," and that any attempt to conduct a "second" sale for non-payment is unauthorized and void. The record before us shows that the lands described in the deeds executed by the Trustees of the Internal Improvement Fund of the State of Florida, to Harry W. Hecht, were sold by the tax collector of Dade County, at a tax sale, which, so far as appears from the record, was legally held and conducted. In making the sale of the lands to Hecht the Trustees did not make a "second sale for taxes." The tax sale had already been made. The sale and conveyance made by the Trustees, was intended as a sale of the land in fee simple, as provided for in Section 1175, Revised General Statutes, as amended by Chapter 10024, Laws of Florida, Acts of 1925, 1546, Compiled General Laws of Florida.

The question then to be determined is, Did the provision of Section 3, Chapter 8412, Laws of Florida, Acts of 1921, hereinabove quoted, sufficiently adopt the procedure set forth in Section 1544, Compiled General Laws of Florida,

authorizing the sale of land by the Trustees of the Internal Improvement Fund, after the expiration of the two years redemption period.

The holding of this Court in the case of Roesch v. Wyman, 62 Fla. 263, 56 So. 562, seems to be contrary to the contention of the appellees. In that case we were considering an "adoption statute regarding the collection of a special assessment for drainage or ditch purposes. This special assessment was provided for in Chapter 5033, Laws of Florida, Acts of 1901, the same being codified in the General Statutes of 1906, as Section 955, and under Chapter 14. Under the provisions of *this* section, the special assessment or tax for drain or ditch purposes was to be *"collected by the tax collector in like manner as other taxes are collected."* In the opinion rendered in that case, we approved the sale of the relator's real estate made at a tax sale for the non-payment of the special assessment, the tax collector having proceeded under the general law governing the sale of property for the non-payment of State and county taxes. We also held that the adoption clause, in Section 955, General Statutes, providing that the special assessment or tax should be *"collected by the tax collector in like manner as other taxes are collected,"* was sufficient to require that one seeking to redeem property sold for such tax or special assessment, should pay the interest and penalities, as was required by one redeeming from a sale for State and county taxes.

If the provision, *"that said assessment shall be collected by the tax collector in like manner as other taxes are collected,"* was sufficient to authorize the sale of property for non-payment of a special assessment, in a procedure under the law governing the collection of State and county taxes, and also to require the same interest, penalties, and costs to be paid, as were required for the redemption from sale

for State and county taxes in the *Wyman case,* it would seem that the clause in Section 3, Chapter 8412, Laws of Florida, Acts of 1921, quoted herein, is sufficient to adopt the law "governing the collection and sale of lands for the non-payment of Everglades Drainage District taxes" as applicable to the collection and sale of lands for non-payment of the one mill *ad valorem* "maintenance tax" thereon provided for.

We are of the opinion that the provision of Section 3, Chapter 8413, Laws of Florida, Acts of 1921, that "the law governing the assessment, collection and sale of lands for non-payment of Everglades Drainage District taxes shall be and are hereby made applicable to the benefit tax herein provided for," is a sufficient "adoption clause" of the Act, to make the procedure provided for in Section 1175, as amended by Chapter 10024, Laws of Florida, Acts of 1925, Section 1546, Compiled General Laws, applicable for the collection of and the sale of lands for the non-payment of, the one mill *ad valorem* "maintenance tax" levied and assessed under said Chapter 8412.

The validity of the *ad valorem* "maintenance tax" levied under the authority of Chapter 8412, Laws of Florida, Acts of 1921, has been sustained by this Court in the case of Richardson v. Hardee, 85 Fla. 510, 96 So. 290. In that case we did not have before us the question of the sufficiency of the provisions of the Act for the collection and the enforcement of the payment of such tax.

The court below erred in holding that the adoption provision of Section 3, Chapter 8412, Laws of Florida, did not warrant the tax collector in proceeding under the provisions of Section 1171, and of Section 1175, as amended by Chapter 10024, Laws of Florida, Acts of 1925, to advertise and sell complainant's property for the non-payment

of the one mill "maintenance tax," and to authorize the sale of the lands by the Trustees of the Internal Improvement Fund, after title vested in them under such law.

We will now consider the second proposition or question presented by the assignment of errors, and which has been stated to be as follows:

"If the Trustees of the Internal Improvement Fund are authorized to sell, and issue deeds to lands within the Everglades Drainage District, on account of the failure of the owner to pay the *ad valorem* maintenance tax provided for in Chapter 8412, Laws of Florida, Acts of 1921, has there been a substantial compliance with the law in the instant case, and do the deeds so issued by the said Trustees convey the fee simple title to the real estate involved, to the appellants?"

This raises the question of the compliance by the respondents with the provisions of the statutes applicable to the making of a valid sale and the execution of a valid deed by the Trustees of the Internal Improvement Fund, under "the law governing the assessment, collection and sale of lands for non-payment of Everglades Drainage District taxes."

The first and principal question is, did the respondents, Trustees of the Internal Improvement Fund, comply with the requirements of the law, in giving the notice of their intention to sell complainants' property, and whether or not the notice was an adequate and sufficient notice to the complainants of such sale and of the expiration of the redemption period?

Prior to the enactment of Chapter 10024, Laws of Florida, Acts of 1925, amending Section 1175, Revised General Statutes, there was no *specific* statutory provision for the redemption of lands embraced in a tax sale certificate for

unpaid Everglades Drainage District taxes, held by the Trustees of the Internal Improvement Fund of the State of Florida, after the expiration of two years from the date of the certificate.. In other words, after title to the lands embraced in tax sale certificates for Everglades Drainage District taxes, vested in the Trustees, under the law, there was no further *specific* provision made in the statute for the owner to redeem.

The amendment made by Chapter 10024, Laws of Florida, Acts of 1925, provided, that the owner or the bona fide successor in title to the owner, should have the right to redeem, at any time before the day of the sale by the Trustees. This amendment to Section 1175, Revised General Statutes, provided that the title to lands embraced in Everglades Drainage District tax sale certificates, vested in the Trustees *"subject to redemption by the owner as hereinafter privoded,"* etc. The redemption authorized by this amendment to Section 1175, Revised General Statutes is in language as follows:

*"Provided,* however, that the bona fide owner of the lands embraced in any such tax sale certificate and who was such owner at the time of said tax sale or the bona fide successor in title to such owner, shall *at any time prior to the day of the sale of such lands* have the right to redeem the same, by paying the amount expressed in the face of such tax sale certificate together with the interest thereon at the rate of two per cent. per month for the first year, and eight per cent. per annum thereafter, and paying the annual taxes for each subsequent year, together with interest thereon at the rate of eight per cent. per annum."

It is further provided in said amendment that the owner or bona fide successor in the title to the owner of any lands, applying to redeem, shall pay all costs and expenses in-

curred by *the Trustees in making up lists and advertising such lands for sale,* should any such costs and expense have been incurred.

Under the provisions of Section 1175, Revised General Statutes, both before and after the amendment thereof by Chapter 10024, Laws of Florida, Acts of 1925, no lands, embraced in any Everglades Drainage District tax sale certificates held by the Trustees of the Internal Improvement Fund of the State of Florida, could be sold by said Trustees until "four weeks' notice of the intention of the said Trustees to make such sale shall have been published in a newspaper published in the county in which such lands lie, and if there is no newspaper published in such county, then such notice shall be published as aforesaid in a newspaper published in Jacksonville, Florida."

At the time of the passage of the Everglades Drainage District Act, Chapter 6456, Laws of Florida, Acts of 1913, Section 12 thereof, which was subsequently codified as Section 1175, Revised General Statutes, made no *specific* provision of any notice to the owners, to redeem lands embraced in drainage tax sale certificates held by the Trustees of the Internal Improvement Fund. There was no *specific* provision made in the statute as it then stood, authorizing any redemption after the expiration of two years from the date of tax sale certificates held by the Trustees; therefore, there was no reason for a notice to redeem. The statute, however, did provide that the Trustees should give four weeks' notice of their intention to sell any property embraced in any drainage tax sale certificate held by them. While no purpose for giving such notice is stated in the statute, we think it was intended to advise the owners of the property, as also to inform prospective bidders of the intended sale.

"Statutes providing for the resale, or other disposition of land acquired at tax sale by states, counties or municipalities frequently contain provisions as to notice to be given thereof, *the purpose being to afford the owner of the land a better opportunity to redeem.* Requirements of this kind must be complied with." (Italics supplied). 61 C. J. Par. 1677, p. 1236.

Citing Graham v. Murphy, 126 La. 210, 52 So. 277; Coleman-Nelson Gasoline Co. v. Montgomery, 151 Okla. 286, 3 P. (2d.) 829.

It may throw some light on the rights of owners of lands embraced in Drainage tax sale certificates held by the Trustees of Internal Improvement Fund, after the expiration of two years from the dates of such certificates, to refer to the provisions of the law regarding tax sale certificates for State and county taxes, held by the State. Section 796, Revised General Statutes, 1027 Compiled General Laws, being a codification of Chapter 4322, Acts of 1895, Section 65, and Chapter 5596, Acts of 1907, Section 62, provides that where land is bid off by the tax collector, for the State, the certificate shall be issued by the tax collector to the State in the name of the Treasurer, and if the land is not redeemed or the certificate sold by the State, *the title to the land shall at the expiration of the time of redemption, vest in the State without the issuance of any deed,* as provided in other cases, and the certificate shall be evidence of *the title of the State,* and none of the provisions of this law providing for the issuing of a deed shall apply to such cases, and in all cases in which land or real estate has heretofore been sold or purchased by the State and the certificate has not been sold or land or real estate not redeemed, and the time of redemption is past, it shall not be necessary for the State to procure a deed, but the title shall be held

by the State, and *the certificate shall be the evidence of the title of the State.*

It will be seen that the holding of vested title by the Trustees of the Internal Improvement Fund under the provisions of Section 1175, Revised General Statutes, 1546 Compiled General Laws, is practically the same as the holding of vested title by the State under Section 1027, Compiled General Laws, 796 Revised General Statutes, to land embraced in tax sale certificates for State and county taxes issued to it in the name of the Treasurer.

In the case of lands embraced in tax sale certificates issued to the State Treasurer, to be held for the State, and after the expiration of two years evidencing title in the State, such certificates are subject to the right of the owner or others interested, to *redeem at any time before the issuance of tax deed after notice* of any purchaser's application for tax deed.

In the one case the State Treasurer is made the depository for State owned tax sale certificates, in the other the Trustees of the Internal Improvement Fund, are made the depositories for tax sale certificates issued for lands sold for Everglades Drainage District taxes bid in by the tax collector.

Section 17, Chapter 6456, Laws of Florida, Acts of 1913, as amended by Section 8, Chapter 6951, Laws of Florida, Acts of 1915, and by Section 5, Chapter 7305, Laws of Florida, Acts of 1917, subsequently codified as Section 1176, Revised General Statutes, Section 1547, Compiled General Laws of Florida, made, from the inception of the law, provision for the redemption of Everglades Drainage District tax sale certificates, held by purchasers *other* than the Trustees of the Internal Improvement Fund of the State

of Florida, as also for the issuance of tax deeds to such holders, in language as follows:

"In the event such certificate is not redeemed as herein provided for, the holder thereof may apply to the clerk of the said circuit court for a deed to said lands described in said certificate. The said clerk shall thereupon cause to be published at the expense of such applicant, in a newspaper published in said county *once each week for four weeks, notice of such application for deed to said lands* and of his intention to execute such deed, and *during such time* the owners of such land or any one claiming the ownership thereof, or his agent or attorney may *redeem such certificate."* (Italics supplied.)

The authorization of the owner, or the bona fide successor in title to the owner, to redeem, at any time *prior to the day of sale of lands* by the Trustees of the Internal Improvement Fund, given by the amendment to Section 1175, Revised General Statutes, hereinabove set forth, would seem to carry with it the legislative intent, that the four weeks' publication of notice by the Trustees of their intention to sell the lands on a certain day, provided for in the statute before such amendment, should, *after the amendment,* be notice to the owner of the last day allowed for the redemption of his lands. Since by the amendment to Section 1175, Revised Statutes of Florida, already referred to and quoted, the owners of lands embraced in drainage tax sale certificates held by the Trustees of the Internal Improvement Fund, were given in definite terms, the right to redeem at any time before the day of sale, and the passing of title from said Trustees, then why should not such owners have notice of the date of such sale, and of the date of the expiration of the period for them to exercise their right to redeem? As we have already observed, drainage tax sale certificates held by private parties,

were, and are, by the law required to have a "notice of the application for tax deed" published four weeks prior to the day the deed shall issue, in order that the owner might have notice to redeem.

We do not think it was the intention of the law makers to require that notice to redeem be given land owners entitled to redeem under the class of tax certificates, and not to require that such notice be given to land owners entitled to redeem under another class of certificates.

As we have already observed, at the time Section 1175 was amended so as to *specifically* authorize the owners of land to redeem drainage tax sale certificates at any time prior to the day of sale of the same by the Trustees, provision had already been made in the statute for. the giving of a four weeks' notice of the "intention of the Trustees to sell" on a certain day. When the amendment was enacted authorizing the owner to redeem, after the expiration of two years from the date of the certificate, there was no need for a further provision requiring notice for the benefit of the owner. Even if the four weeks' publication of notice of the intention of the Trustees, to sell was not from the first, given for the benefit of the owner, there can be no doubt as to its effect *after* the amendment allowing redemption up to the day of sale.

For a number of years it has been the public policy in the State of Florida, expressed by statute, to permit the owners of land, sold for taxes, to redeem the same at any time up to the execution of tax deed by the proper authorities. While there has not, under the statutes of Florida, been any provision made for a "notice to redeem" nor a form for such notice; yet the "notice of application for tax deed" provided for under the general tax law, and the

service and publication of such notice, has been considered and treated as a "notice to redeem."

The four weeks' notice, required in Section 1175, Revised General Statutes, as amended by Chapter 10024, Laws of Florida, Acts of 1925, Section 1546, Compiled General Laws of Florida, is intended to be given for the benefit of the land owner or his bona fide successor in title, and to give notice to such party, of his last chance to redeem, and it should contain *all* the essentials of a "notice to redeem."

"Statutes allowing redemption from tax sales are to be construed in favor of upholding their validity, against uncertainty in their operation, *and liberally in favor of the redemption.*" (Italics supplied.) 61 C. J. 1243.

Referring again to Section 1176, Revised General Statutes of Florida, Section 1547, Compiled General Laws, we find that it was the idea of the legislators, in the passage of the laws codified in this section, that, before deeds should be executed by the Trustees of the Internal Improvement Fund, conveying lands held and owned by them under drainage tax sale certificates, there should be notice given of the expiration of the redemption period. And *this* prior to the enactment of Chapter 10024, Laws of Florida, Acts of 1925, *specifically* providing for redemption up to the day of sale of the lands by the Trustees.

We find in said Section 1176, Revised General Statutes this provision:

"No such tax deed, and *no such deed given by the Trustees,* shall be set aside or deemed ineffectual to convey title because of any defect in the description * * *, or because of the failure to publish or post the notice of sale or the notice of application for tax deed or *notice of expiration of redemption period,* or provided at least one publication or posting of the notice of application for tax deed, or *notice*

*of expiration of redemption period* shall have been made, etc." (Italics supplied.)

There is a further provision in this section we are considering, indicating that a "notice of expiration of redemption period" was intended by the law makers, before the execution of deeds by the Trustees, as follows: "All tax deeds, *and deeds issued by the Trustees pursuant to this Article,* shall be and are hereby declared *prima facie* evidence of the regularity of the proceedings; * * * and no defense shall be permitted thereto except the two defenses last hereinabove mentioned, *and the defense that no* notice of application for tax deed, *or if the expiration of the period of redemption was at any time either posted or published or mailed or delivered to the owner,* etc." (Italics supplied.)

The complainants, as owners of the lands described in the tax sale certificate embracing their land, or their bona fide successors in title, were under the law entitled to a "notice to redeem" or a "notice of the expiration of the redemption period" before a valid deed could be executed by the Trustees of the Internal Improvement Fund of Florida. The statutes we have been considering do not prescribe a form of such notice, nor do they state what the content of such notice shall be.

The form of notice of application for tax deed, prescribed under the provisions of Section 777, Revised General Statutes, 1001 Compiled General Laws, seems to set forth the legislative intent as to what such notice, being as we have hereinabove said a "notice to redeem," should contain. This form of notice is as follows:

"Notice is hereby given that ........, holder of tax sale certificate No. ........, dated the ........ day of ........, A. D. ........, has filed said certificate in my office and has made appli-

cation for tax deed to issue in accordance with law. Said certificate embraces the following described property situated in ........ County, Florida, to-wit: .................................... The said land being assessed at the date of the issuance of such certificate in the name of ................................... Unless said certificate shall be redeemed according to law tax deed will issue thereon on the ........ day of ........, A. D. ...................

...................................................

Clerk of Circuit Court, ........County, Florida."

The above quoted statutory form has been recognized by us as a "notice to redeem" or a "notice of the expiration of the redemption period," for the lands sold for State and County taxes. It sets forth the recognized essentials of a "notice to redeem" in this State. Such notice gives the name of the holder of the tax sale certificate; the number and date of the tax sale certificate; the description of the property embraced in such certificate; the name of the person to whom the land was assessed when the tax sale certificate issued; and the date on which the right to redeem will expire.

At the time of the enactment of the law providing for the publication of the notices, found in Sections 1175 and 1176, Revised General Statutes, Section 1546 and 1547, Compiled General Laws, the form of notice above quoted had been written into the statutes of Florida for many years. This notice sets forth clearly and briefly the intent of the law makers as to what a "notice to redeem" should contain. When the Everglades Drainage District Act became a law in 1913, with its provisions now found in Sections 1175 and 1176, Revised General Statutes, this legislative intent as to the content of a "notice of the expiration of the period of redemption," was evidently in the minds of the legislators. The public policy of the State, touching the essen-

tials of a "notice to redeem" had already been expressed in the statute, no useful purpose could have been served in reiterating, in the Everglades Drainage District tax procedure, the essentials of such a notice. Then, too, there is a provision found in Section 1167, Revised General Statutes of Florida, Section 1537, Compiled General Laws, which would seem to require the provisions of Section 777, Revised General Statutes, Section 1001, Compiled General Laws, regarding contents of notice to redeem to be followed in the absence of other provisions controlling the same in the Drainage Act. The provision to which we refer, is found at the conclusion of Section 1167, Revised General Statutes, and is as follows: "Except as herein *specifically provided,* all laws relating to State and county taxes in the State, be and are hereby made applicable to Everglades Drainage District." (Italics supplied.)

When "a notice to redeem" is required, due process of law demands that such notice be given before the owner's right to redeem can be foreclosed.

Was the notice given by the Trustees in the instant case legally and otherwise sufficient to warrant the Trustees of the Internal Improvement Fund, to sell and convey the land of the complainant, and foreclose their right to redeem?

The notice given by the Trustees, as appears from the record before us, is as follows:

"Tallahassee, Florida,
"February 27, 1931.

"Notice is hereby given that under the provisions of Section 1175, Revised General Statutes of Florida (Section 1546, Compiled General Laws), the Trustees of the Internal Improvement Fund of the State of Florida will, beginning at 10:00 o'clock A. M., on April 8th, 1931, at the

Capitol in Tallahassee, offer for sale, subject to redemption prior to date of sale, the following described lands, title to which is vested in the said Trustees by virtue of Everglades Drainage District tax certificates, all lying and being in Dade County, Florida:

"Lots 3 to 14, inclusive, Malcolm & Warren, S/D. P. B. 11, p. 66, Section 1-54-40; Lot 12, Block 2, Tamiami Square, S/D. P. B. 24, p. 15, Section 11-54-40; Lots 9, 10 and 11, Block 4, Midway, P. B. 6, p. 109, Section 32-55-40; Lots 30, 31 and 32, Block 2, Bougainvillea Place, S/D. P. B. 21, p. 53, Section 6-53-41; Lot 1, Block 14, Sec. A, Coral Gables, S/D. P. B. 5, p. 111, Sections 7 and 8-54-41; Lot 20, Block 1, Sec. B, Coral Gables, S/D. P. B. 5, p. 111, Secs. 7 and 8-54-41; Lot 2, Block 18, Sec. B, Coral Gables, S/D. P. B. 5, p. 111, Secs. 7 and 8-54-41; Lot 7, Block 21, Sec. B, Coral Gables, S/D. P. B. 5, p. 111, Secs. 7 and 8-54-41; Lots 9 and 10, Block 10, Sec. E, Coral Gables, S/D., Block 9, P. B. 12, p. 38, Sec. 7-54-41; S½ Lot 7 and all Lot 8, Block 16, Sec. E, Coral Gables, S/D., Block 9, P. B. 12, p. 38, Sec. 7-54-41; Lots 1 and 2, Block 23, Sec. E, Coral Gables, S/D., Block 9, P. B. 12, Sec. 20-54-41; Lot 25, Block 31, Riviera Sec., Part 1, Coral Gables, S/D. P. B. 23, p. 12, Sec. 20-54-41.

"Terms: Cash. Redemption will be for the amount of Everglades Drainage taxes, together with interest, penalties and costs. Purchase will be for an amount to be determined by the Trustee, but in no case for less than the amount required for redemption. The right to reject any and all purchase bids is reserved.

"By order of the Trustees of Internal Improvement Fund. Doyle E. Carlton, Governor. Attest: F. C. Elliott, Sec'y."

We are of the opinion that the above quoted notice given by the Trustees of the Internal Improvement Fund, fails

in a number of respects to meet the requirements of a notice to the owner to redeem lands embraced in a drainage tax sale certificate.

In the first place, the description of the property is not in said notice, set forth with sufficient clearness and precision to reasonably inform the owner, the particular land that is offered for sale, nor whether the land is his. ·

We have already held in this opinion that the notice required to be given by the Trustees of the Internal Improvement Fund, under the provisions of Section 1175, Revised General Statutes, as amended (Section 1546, Compiled General Laws), is a notice to the *owner* or *bona fide successor in title to the owner,* to redeem. It must set forth the essentials of a "notice to redeem" as we have already discussed.

"The redemption notice should describe the property with sufficient clearness and precision to inform the owner with reasonable certainty which particular lot or tract of land is intended; and a *misleading description* or *substantial defect* in description will invalidate the notice." 61 C. J. 1264. (Italics supplied.)

Under the provisions of Section 1176, Revised General Statutes of Florida (Section 1547, Compiled General Laws), if a deed given by the Trustees of the Internal Improvement Fund is to be held valid and effectual to convey title, among other things, the description of the land must be *"sufficient to describe the premises with reasonable certainty."*

Is the land of the complainant, in the instant case, described in the above quoted notice, so that an ordinary layman can interpret or construe it with reasonable certainty, and determine what or whose property is intended to be described? · In the notice the property in question

seems to be described as "Lot 20, Block 1, Sec. B, Coral Gables, S/D. P. B. 5, p. 111, Sections 7 and 8-54-41."

This description may, perhaps, be easily interpreted by a competent surveyor, by a tax official, abstractor of titles, and probably by an attorney who has had experience in the use of the abbreviations appearing in this description. But what would the term, "Sec. B, Coral Gables, S/D. P. B. 5, p. 111," mean to the complainants, for whose benefit this notice was required? What does the abbreviation "S/D." or "P. B." mean to the everyday man or woman? What might they be expected to mean to the owners, as persons of ordinary everyday experience and intelligence?

To this Court, studying the record, and reading the full description of the property as it appears in the record, "S/D." means "subdivision" and "P. B." means "Plat Book"; but these symbols or abbreviations might not convey such meanings to a person without aids other than their own experience. These abbreviations should not have been used in describing the property in the notice to the owner "to redeem."

The description of the property in the published notice, is vague, indefinite and uncertain in another particular: That part of the description as follows: "Sections 7 and 8-54-41"—what would the numbers "54-41," used as they are in this notice, mean to the ordinary land owner? The word "Sections" preceding the figures might lead one to think that "54-41" had reference to Sections. Of course, to this Court, and to others having experience in interpreting descriptions of land, it means Township "54" Range "41." However, as set forth in the notice these numbers, having nothing to indicate that they had reference to township and range, might not be readily and reasonably construed, by the ordinary land owner as referring to the

township and range in which Sections 7 and 8, were located. In our opinion, it was not sufficiently clear in the notice to advise the owner, that his land in a certain section, township and range was to be sold, unless redeemed by a certain day.

These symbols and abbreviations used in the notice, to describe the lands, might be a sufficient description in a deed, as a competent surveyor might interpret them, so as to be able to locate the land. But in giving notice to an owner that his property will be sold unless he redeems, the description must be such that the owner, may know upon reading it, that *his* land is involved.

In the case at bar, complainant's property, valued at thousands of dollars, was about to be forfeited, and sold, and their right to redeem foreclosed, for 63 cents tax. Before such forfeiture of property could be had by an absolute sale, the owners were entitled to a notice in which their property was clearly described with reasonable certainty, and in such words, symbols and characters as could easily be interpreted by them.

It further appears from the notice given by the Trustees, and hereinabove quoted in full, the complainants' land was advertised to be offered for sale along with several other lots or tracts described by similar abbreviated terms, characters and symbols. It was stated in the notice that *all* the property would be offered for sale on a certain day "subject to redemption." One might be led to readily interpret this to mean, that all the property must be redeemed, or all would be sold.

"It is usually permissible to include several distinct tracts in one notice, *if they are owned by the same person,* but each tract must be separately described." 61 C. J. 1264. (Italics supplied.)

"If notice includes distinct parcels of land it must state the amount required for the redemption of each and not the aggregate sum." 61 C. J. 1265.

The notice in this case includes several distinct tracts of land. Even if they were all owned by the complainants, the notice should have been so drawn as to advise that any one or more of the said tracts or parcels could be redeemed.

Evidently the several parcels or tracts of lands, which the notice undertook to describe belonged to perhaps as many different owners. There is nothing in the notice to show to whom any of the property was assessed, or the date of the tax sale, at which tax sale certificates were issued, as required in the statutory form of "notice of application for tax deed" or as we may term it, the form of "notice to redeem" already quoted herein. There is no number of the tax sale certificate under which the Trustees claimed to sell the complainants' property given in the notice, nor is the number of certificate for any other tract or parcel of the land included in the notice given.

A tax redemption notice relating to several lots, which states that unless all are redeemed within the proper period, each will be conveyed, is insufficient and invalidates tax deeds issued thereon." Wolfe v. Wolf, 88 Kan. 205, 128 Pac. 274.

In 61 C. J. at page 1257, under the heading, "notice to Redeem," the writer says:

"Within the test of due process it has been held that the owner is entitled to same notice of the time within which he may exercise his right of redemption, after the sale of his property for taxes. This notice usually provided for and requested by statutes requiring that an officer, or a purchaser at a tax sale, shall give notice, within a designated time, of the expiration of the period allowed for redemption,

and of the purchaser's present application, or his intention thereupon to apply for a deed; and *the statute must be strictly followed,* and the acquisition of such knowledge in any other manner than the *specified notice,* by the person entitled to it *is not* equivalent to, or effective as notice." (Italics supplied.)

"The test of the sufficiency of notice is whether persons to whom the notice is addressed, would be sufficiently advised of the facts, which the tax title holder is required to disclose." Heethuis v. Kerr, 194 Mich. 689. 161 N. W. 910.

"Title in the purchaser cannot be perfected, and the tax deed issued is void or at least voidable, if the statutory redemption notice is not given, or *if given it is fatally defective,* and the owner's right of redemption is open and unlimited as to time until the statutory requirement is fulfilled. (Italics supplied.)    61 C. J. 1258.

See also Tax Securities Corporation v. Borland, 103 Fla. 63, 137 So. 151; Hecht v. Cardinal, 103 Fla. 930, 140 So. 648.

In Tax Securities Corporation v. Borland, *supra,* we said regarding notice of application for tax deed, which is a "notice to redeem," the following:    "Statutory provisions governing notice of issuance of tax deed are *jurisdictional* insofar as authority to issue deed is concerned."

In the case of Clark Ray Johnson Company v. Willford, 62 Fla., page 459, text, this Court speaking through Mr. Justice WHITFIELD, said the following:

"The statutory requirements that notice to the owner of the application of the tax certificate holder for a tax deed thereon shall be given in a stated manner, *are intended for the protection of the property rights of the owner of the land.* Such requirements are *mandatory,* and a failure of

the officer to *substantially comply therewith* will render the deed void, since the authority to issue must be exercised in the manner definitely prescribed. An applicant for a tax deed, who takes it when the authority to execute it has not been exercised as required by mandatory provisions of law, does so at his peril." (Italics supplied.)

From what we have said regarding the notice given by the Trustees of the Internal Improvement Fund of their "offer to sell" complainant's land, under tax sale certificate, we hold that the notice was not such notice under the laws of Florida, as would authorize the Trustees of the Internal Improvement Fund of the State of Florida, to sell and execute a valid deed for the property to a purchaser. We therefore hold that the court below did not err, in declaring the two deeds, from the Trustees, to Hecht, void and ordering them canceled as clouds on complainants' title.

The appellants claim in their briefs, that there is a third proposition raised in the record, before us. This question is stated by the counsel for appellants as follows:

"Will a court of Equity lend its aid to a taxpayer who has conveyed away his property for the purpose of hindering and delaying his creditors and attempting to place it beyond their reach in an action brought by a taxpayer to set aside and cancel a so-called tax deed, when at the time of the sale of the lands for failure to pay taxes, the record title to the property was not vested in the taxpayer?"

The appellants base their contentions set forth in the foregoing proposition, upon certain testimony given by the complainant, F. C. Shaw, in which he testified that, on the first day of August, 1922, the complainants joined in a warranty deed for the property in controversy, to one Agnes Cate, for the purpose of having the record show that the

complainant, F. C. Shaw, had no real estate. It was further testified that he thought he was about to be sued by some man in the North, regarding some "boom time" controversy. He further testified that Agnes Cates reconveyed the property to the complainants on August 5, 1927, just five days after they had executed and recorded their warranty deed to her.

We think the contention of the appellants is untenable. Even if the conveyance by the complainants to Agnes Cates passed the fee simple title to her, and such title was in her name, when the tax sale was made and tax certificate embracing the land issued, the title was again vested in the complainants on August 5, 1927, by deed from the grantee named in their deed.

If, under the circumstances detailed above, the complainants were not the owners of the land on the day the tax sale certificate issued, they were the successors in title to Agnes Cates, the owner, and had the right to redeem on April 8, 1931, when the deeds were issued by the Trustees. Under the provisions of Section 1175, Revised General Statutes, as amended by Chapter 10024, Laws of Florida, Acts of 1925, they have their standing in court as the "successors in title" to the owner of the record title. We find no merit in this third proposition raised by appellants.

After the rendition of the final decree the respondents, in the court below moved the court below to vacate and set aside the portion of the final decree relating to the costs. This motion was denied. The appellants by one of their grounds in the assignment of errors, assign this ruling of the court below.

We are of the opinion, that under the authority of San Sebastian Development Corporation v. Couch, 103 Fla. 692,

138 So. 61, that the court below erred in taxing the costs, to the respondents.

The statutes of Florida seem to provide that a tax sale purchaser, even after deed executed, and title undertaken to be conveyed to him thereby shall upon the setting aside of the deed at the suit of another be reimbursed for all taxes, interest, penalities, costs and expenses incurred by reason of his purchase. We think when the court orders the reimbursement of the respondent in a suit to set aside tax deed, of the moneys invested by him in the purchase and because of the purchase, the costs of the suit by the complainant would necessarily follow.

From what has been said we find no reversible error in the judgment of the court below in the cancellation of the deeds from the Trustees of the Internal Improvement Fund of the State of Florida, to Harry W. Hecht; and in quieting title in complainants against such deeds; and in permanently enjoining the respondent Hecht in prosecuting his suit in ejectment.

The decree of the court will be affirmed, except as to the taxing of the costs, and the case will be remanded with directions to the court below to tax the costs in that court against the complainants.

WHITFIELD and ELLIS, J. J., and JOHN U. BIRD, Circuit Judge, concur in conclusion.

BROWN, J., concurs specially.

BROWN, J. (concurring specially).—I concur in Judge Campbell's able opinion except insofar as the contents of the notice are concerned, as to which I have finally concluded to concur in Mr. Justice WHITFIELD's views.