578 So.2d 503 (1991)
Gerald SILVA, As Personal Representative of the Estate of Anne Marie N. Silva, Deceased, Appellant,
v.
SOUTHWEST FLORIDA BLOOD BANK, INC., Appellee.
No. 90-02200.
District Court of Appeal of Florida, Second District.
April 26, 1991.
*504 F. Ronald Fraley of Fraley & Fraley, P.A., and Robert A. Foster, Jr. of Robert A. Foster, Jr., P.A., Tampa, for appellant.
Ted R. Manry, III, D. James Kadyk, and Harold D. Oehler of Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellee.
HALL, Judge.
The appellant, Gerald Silva, as the personal representative of his deceased wife's estate, challenges the order dismissing his cause with prejudice due to the running of the statute of limitations. Silva contends the trial court erroneously applied the medical malpractice statute of limitations because his cause of action sounds in negligence.
In August 1985, Silva's wife received multiple units of cryoprecipitate, a blood component, immediately after the birth of the Silvas' child. In November 1986, Mrs. Silva's blood tested positive for the human immunodeficiency virus, which virus causes acquired immune deficiency syndrome. Mrs. Silva died as a result of an AIDS-related illness in January 1990.
In December 1989, the Silvas filed an action for damages against Southwest Florida Blood Bank, Inc., the supplier of the blood from which the cryoprecipitate provided Mrs. Silva was derived. In response, Southwest filed a motion to dismiss, alleging that it is entitled to rely on section 95.11(4)(b), Florida Statutes (1989), the medical malpractice statute of limitations, because it is a health care provider or, in the alternative, it is in privity with the health care provider hospital at which Mrs. Silva received the cryoprecipitate.
The trial court entered an order granting the motion to dismiss, finding that Southwest is a health care provider, that all of the claims made by Silva arose out of medical or surgical diagnosis, treatment, or care by a health care provider, and that Southwest is therefore entitled to rely on the two-year medical malpractice statute of limitations. The court further found that the limitations period began to run in November or December 1986, and that since the Silvas did not institute their action until December 1989, their action is barred. We agree with the trial court's findings and affirm the order of dismissal.
By this appeal, Silva contends that Southwest is not a health care provider and nothing in section 95.11(4)(b) remotely suggests the legislature intended it to be considered as one. Citing Durden v. Am. Hosp. Supply Corp., 375 So.2d 1096 (Fla.3d DCA 1979), cert. denied, 386 So.2d 633 (Fla. 1980), Silva also contends that, even if Southwest were a health care provider, it did not provide medical diagnosis, treatment, or care to his wife as there was no direct contact between Southwest and Mrs. Silva. Rather, Southwest merely sold blood to the hospital at which Mrs. Silva received the transfusion.
Southwest asserts in response that Silva's action against it is an action for medical malpractice because the legislature has defined blood banks as health care providers, § 766.102(1), Fla. Stat. (1989), and has declared the services performed by blood banks to be medical services that are an intricate part of the practice of medicine, ch. 69-157, Laws of Fla. We agree with Southwest's assertions and find further support for them in the amicus brief of the Florida Association of Blood Banks, Inc.
The two-year medical malpractice statute of limitations defines an action for medical malpractice "as a claim in tort or in contract for damages because of the death, injury, or monetary loss to any person arising out of any medical, dental, or surgical diagnosis, treatment, or care by any provider of health care." § 95.11(4)(b). We find that Silva's second amended complaint states a cause of action for medical malpractice against Southwest. First, the complaint seeks damages based both on a tort claim for negligence and a contract claim for breach of the implied warranties of merchantability and fitness for a particular purpose.
Second, the legislature has defined blood banks as health care providers. *505 § 768.50(2)(b), Fla. Stat. (1977).[1] Although section 768.50 was repealed in 1986, ch. 86-160, § 68, Laws of Florida, subsection 768.50(2)(b) was not, as it is cross-referenced in subsection 766.102(1), Florida Statutes (1989). See Hecht v. Shaw, 112 Fla. 762, 151 So. 333 (Fla. 1933). Section 766.102 defines the standards of recovery in all medical negligence actions. By incorporating the definition of health care provider in subsection 768.50(2)(b) into subsection 766.102(1), the legislature has specifically identified those health care providers against whom actions for medical malpractice may be brought.
Third, with regard to the provision of diagnosis, treatment, or care element of an action for medical malpractice, we acknowledge that at first blush this element seems incapable of satisfaction in this case because Mrs. Silva did not directly receive treatment from Southwest. However, we note that Silva's allegation of negligence implies that Southwest owed a duty toward Mrs. Silva that it breached. That implication reveals that a relationship existed between Southwest and Mrs. Silva despite the lack of direct contact between the two. See Kaiser v. Memorial Blood Center of Minneapolis, Inc., 721 F. Supp. 1073, 1075, n. 3 (D.Minn. 1989). Furthermore, notwithstanding this lack of direct contact, we believe the legislature's treatment of blood banks reveals an acknowledgment that blood banks do provide treatment for those who receive their blood. Consequently, as we will explain later, we disagree with Durden and therefore reject Silva's reliance on that case.
In the enacting provision of what has come to be known as the blood shield statute, § 672.316(5), Fla. Stat. (1989), which statute abolished the applicability to blood of the implied warranties of merchantability and fitness for a particular purpose where a defect cannot be detected through the use of reasonable scientific techniques, the legislature declared in pertinent part:
[T]he procurement, processing, storage, distribution, or use of whole blood, plasma, blood products, and blood derivatives, for the purpose of injecting or transfusing the same or any of them, into the human body provides the general public with a desirable and necessary medical service, and ... the rendering of this service is an intricate part of the practice of medicine... .
Ch. 69-157, Laws of Fla. That the enumerated activities are medical services is reflected in the fact that laboratories operated by blood banks are defined as clinical laboratories, Fla. Admin. Code Rule 10D-41.066(1), which are laboratories "where examinations are performed on materials or specimens taken from the human body to provide information or materials for use in the diagnosis, prevention, or treatment of a disease or the assessment of a medical condition," § 483.041(1), Fla. Stat. (1989). To protect the public health, safety, and welfare from improper clinical laboratory performance, the legislature enacted the Florida Clinical Laboratory Law. §§ 483.011-483.25, Fla. Stat. (1989). That law and its corresponding administrative rules, Fla. Admin. Code Rules 10D-41.066-.094, regulate virtually every aspect of the operations of clinical laboratories, from their construction, § 483.051(6); Fla. Admin. Code Rule 10D-41.082, to their organization and administration, Fla. Admin. Code Rule 10D-41.081, to their standards of safety and sanitation, § 483.051(7); Fla. Admin. Code Rule 10D-41.084. In addition, there are extensive requirements regarding the qualifications of clinical laboratory personnel. § 483.161; Fla. Admin. Code Rule 10D-41.067-.075. The director of a clinical laboratory specializing in hematology must be a board certified physician or hold a doctoral degree in a chemical, physical, or biological science and be board certified or have four years of clinical laboratory training and experience. Fla. Admin. Code Rule 10D-41.067(1), (2). A supervisor must have a doctoral *506 or master's degree in a chemical, physical, or biological science and a specified amount of clinical laboratory experience or be qualified as a technologist. Fla. Admin. Code Rule 10D-41.068. A technologist must have a certain amount of education and/or experience in a medical technology program or in the chemical, biological, or physical sciences. Fla. Admin. Code Rule 10D-41.069. A technician must also have a certain amount of education or experience in a medical laboratory technician program or in the chemical, biological, or physical sciences. Fla. Admin. Code Rule 10D-41.070. Further, clinical laboratory personnel are required to be licensed, which is conditioned upon the successful completion of pertinent examinations. § 483.051(1)(a), (2), § 483.141; Fla. Admin. Code Rule 10D-41.071. The renewal of licenses is conditioned upon specified numbers of hours of continuing education courses. § 483.152, § 483.154; Fla. Admin. Code Rule 10D-41.074.
As can be seen from the foregoing statutes and administrative rules, the trial court correctly held that Silva's complaint stated causes of action for medical malpractice against Southwest. In addition to the fact that the legislature has defined blood banks as health care providers, it has declared the services they provide to be medical services that are an intricate part of the practice of medicine. In recognition of the fact that these services provide "materials for use in the diagnosis, prevention, or treatment of a disease or the assessment of a medical condition," § 483.041(1), the legislature has directed the Department of Health and Rehabilitative Services to regulate virtually every aspect of the operations of blood banks. Particularly revealing of the medical nature of blood bank services is the fact that blood bank personnel must have scientific or technical backgrounds and must maintain a current knowledge of their areas of expertise. Thus, we hold the legislature has clearly expressed its intent that blood banks are health care providers of medical treatment, diagnosis, or care.
In light of our holding, we disagree with Silva's reliance on Durden in support of his contention that Southwest did not provide medical diagnosis, treatment, or care to Mrs. Silva. Durden was an action in which a blood donor contracted hepatitis through the use of an unsterilized needle during the extraction of his blood. The Third District found that Durden's cause of action against the blood donor center sounded in negligence rather than medical malpractice because in selling his blood to the donor center, Durden received no medical, dental, or surgical diagnosis, treatment, or care. Silva asserts that if a donor, who has had direct contact with the blood bank, has been found not to have received medical diagnosis, treatment, or care from that blood bank, then surely Mrs. Silva, who had no contact with Southwest, cannot be found to have received medical diagnosis, treatment, or care from Southwest. We disagree with Silva's assertion because we disagree with the holding of Durden. The legislature specifically included the procurement of blood in the services it declared to be medical services that are an intricate part of the practice of medicine. Furthermore, as we have explained, the person who extracts donors' blood must have a scientific or technical education and the extraction is performed at a facility regulated by the Clinical Laboratory Law. Thus, we hold that the donors and the recipients of blood from blood banks are rendered treatment, diagnosis, or care by those health care provider blood banks. We certify direct conflict with Durden v. Am. Hosp. Supply Corp.
Accordingly, we affirm the trial judge's dismissal of Silva's complaint based on his finding that the complaint states a cause of action for medical malpractice against Southwest and that it was filed after the applicable two-year statute of limitations had run.
Affirmed.
SCHOONOVER, C.J., and DANAHY, J., concur.
NOTES
[1] Although section 95.11(4)(b) was already in effect, ch. 75-9, § 7, Laws of Fla., when section 768.50(2)(b) was enacted, ch. 77-64, § 7, Laws of Fla., that fact is not fatal to the effectiveness of section 768.50(2)(b) because "there is a general presumption that later statutes are passed with knowledge of prior existing laws, and a construction is favored which gives each one a field of operation... ." Oldham v. Rooks, 361 So.2d 140, 143 (Fla. 1978).