601 So.2d 1184 (1992)
Gerald SILVA, etc., Petitioner,
v.
SOUTHWEST FLORIDA BLOOD BANK, INC., Respondent.
John SMITH, et ux., etc., Petitioners,
v.
SOUTHWEST FLORIDA BLOOD BANK, INC., Respondent.
Nos. 77980, 78012.
Supreme Court of Florida.
May 28, 1992.
Rehearing Denied August 14, 1992.
*1185 Raymond T. Elligett, Jr. and Charles P. Schropp of Schropp, Buell & Elligett, P.A., and F. Ronald Fraley of Fraley & Fraley, and Robert A. Foster, Jr. of Robert A. Foster, Jr., P.A., Tampa, for petitioner, Silva, etc.
Elizabeth Russo of the Law Offices of Elizabeth Russo, Coconut Grove, and Peeples, Earl & Blank, Sarasota, and Anderson, Moss, Parks & Russo, P.A., Miami, for petitioners, Smith, et ux., etc.
Ted R. Manry, III and D. James Kadyk of Macfarlane, Ferguson, Allison & Kelly, Tampa, for respondent.
Kelley B. Gelb of Krupnick, Campbell, Malone & Roselli, P.A., Fort Lauderdale, Florida, and Andre Perron of Blalock, Landers, Walters & Vogler, P.A., Bradenton, amicus curiae for Academy of Florida Trial Lawyers.
Kennedy Legler, III of Legler & Flynn, Bradenton, amicus curiae for John Doe.
Thomas J. Guilday and Pamela K. Frazier of Huey, Guilday, Kuersteiner & Tucker, P.A., Tallahassee, amicus curiae for Florida Ass'n of Blood Banks, Inc.
Jeannette M. Andrews of Fuller, Johnson & Farrell, P.A., Tallahassee, amicus curiae for American Nat. Red Cross and American Ass'n of Blood Banks.
BARKETT, Justice.
We have before us the consolidated cases of Silva v. Southwest Florida Blood Bank, Inc., 578 So.2d 503 (Fla. 2d DCA 1991), and Smith v. Southwest Florida Blood Bank, Inc., 578 So.2d 501 (Fla. 2d DCA 1991), because of direct and express conflict with Durden v. American Hospital *1186 Supply Corp., 375 So.2d 1096 (Fla. 3d DCA 1979), cert. denied, 386 So.2d 633 (Fla. 1980).[1] The issue to be decided in both cases is whether blood banks are subject to the two-year statute of limitations for medical malpractice suits under section 95.11(4)(b), Florida Statutes (1991), or the four-year negligence statute of limitations under section 95.11(3)(a).

The Silva Case
Anne Marie Silva received blood product transfusions from Southwest Florida Blood Bank, Inc. during the birth of her child. Her doctors relayed Southwest's assurances that its blood supply was safe and free from HIV because of the testing procedures used. Mrs. Silva nonetheless contracted the HIV virus, testing positive at the end of 1986. She died of AIDS in January 1990. The Silvas initiated suit against Southwest in December 1989, ultimately amending the complaint to allege negligence and breach of Southwest's warranty regarding the representation that its blood by-product was safe. The trial court dismissed the suit, finding that Southwest was a health care provider and thus entitled to the medical malpractice statute of limitations. The Second District affirmed, but acknowledged conflict with Durden v. American Hospital Supply Corp., which had refused to apply the medical malpractice limitations statute to an action by a donor against a blood bank.

The Smith Case
In February 1984 the Smith's baby received blood product transfusions supplied by Southwest while hospitalized for suspected meningitis. Southwest notified the Smiths in April 1986 that the donor had tested positive for HIV. The baby then tested positive for HIV. The Smiths filed suit in January 1990 against Southwest alleging negligence. The trial court ruled the suit timebarred under section 95.11(4)(b), finding that Southwest "clearly meets at least the privity requirement of that Statute of Limitations." The Second District did not address the privity argument, but rather affirmed on the authority of Silva.

Analysis
Section 95.11(4)(b), Florida Statutes (1991), provides:
An action for medical malpractice shall be commenced within 2 years from the time the incident giving rise to the action occurred or within 2 years from the time the incident is discovered, or should have been discovered with the exercise of due diligence... . An "action for medical malpractice" is defined as a claim in tort or in contract for damages because of the death, injury, or monetary loss to any person arising out of any medical, dental, or surgical diagnosis, treatment, or care by any provider of health care. The limitation of actions within this subsection shall be limited to the health care provider and persons in privity with the provider of health care.
(Emphasis added). Thus, under the statute our inquiry is twofold: (1) whether the action arose out of "medical ... diagnosis, treatment, or care," and (2) whether such diagnosis, treatment, or care was rendered by a "provider of health care."
As the court in Durden recognized, our initial responsibility when construing a statute is to give the words their plain and ordinary meaning.
"In making a judicial effort to ascertain the legislative intent implicit in a statute, the courts are bound by the plain and definite language of the statute and are not authorized to engage in semantic niceties or speculations. If the language of the statute is clear and unequivocal, then the legislative intent must be derived from the words used without involving incidental rules of construction or engaging in speculation as to what the judges might think that the legislators intended or should have intended."
375 So.2d at 1098-99 (quoting Tropical Coach Line, Inc. v. Carter, 121 So.2d 779, 782 (Fla. 1960)). A court must not resort to sources outside a statute to interpret clear *1187 and unambiguous words the legislature chose to employ. Shelby Mut. Ins. Co. v. Smith, 556 So.2d 393, 395 (Fla. 1990).
In this case, we must also keep in mind the pertinent rules of construction applicable to statutes of limitations. This Court has previously stated that "[w]here a statute of limitations shortens the existing period of time the statute is generally construed strictly, and where there is reasonable doubt as to legislative intent, the preference is to allow the longer period of time." Baskerville-Donovan Eng'rs, Inc. v. Pensacola Executive House Condominium Ass'n, Inc., 581 So.2d 1301, 1303 (Fla. 1991); see also Angrand v. Fox, 552 So.2d 1113, 1116 (Fla. 3d DCA 1989) ("It is well established that a limitations defense is not favored[,] and that therefore, any substantial doubt on the question should be resolved by choosing the longer rather than the shorter possible statutory period." (citations omitted)), review denied, 563 So.2d 632 (Fla. 1990). Thus, ambiguity, if there is any, should be construed in favor of the plaintiffs.
With these rules in mind, we must first ascertain whether Southwest rendered "diagnosis, treatment, or care" to the plaintiff patients in this case. Southwest argues that, as a matter of law, blood banks provide "diagnosis, treatment, or care" to the patients that ultimately receive its blood products. The Second District acknowledged "that at first blush this element [providing diagnosis, treatment, or care] seems incapable of satisfaction ... because Mrs. Silva did not directly receive treatment from Southwest." Silva, 578 So.2d at 505. The court nonetheless found the requirement satisfied by relying on extrinsic materials to interpret the plain words of the statute. We find the analysis of the Second District erroneous in light of the principles of statutory construction discussed above.
First, there is no ambiguity to clarify in the words "diagnosis," "treatment," or "care," and we find that these words should be accorded their plain and unambiguous meaning. In ordinary, common parlance, the average person would understand "diagnosis, treatment, or care" to mean ascertaining a patient's medical condition through examination and testing, prescribing and administering a course of action to effect a cure, and meeting the patient's daily needs during the illness. This parallels the dictionary definitions of those terms. According to Webster's Third International Dictionary (1981), "diagnosis" means "the art or act of identifying a disease from its signs and symptoms." Id. at 622. "Treatment" means "the action or manner of treating a patient medically or surgically." Id. at 2435. "Care" means "provide for or attend to needs or perform necessary personal services (as for a patient or child)." Id. at 338. Likewise, in medical terms, "diagnosis" means "[t]he determination of the nature of a disease." Stedman's Medical Dictionary 428 (25th ed. 1990). "Treatment" means "[m]edical or surgical management of a patient." Id. at 1626. And "care" means "the application of knowledge to the benefit of ... [an] individual." Id. at 249.
Under the allegations in the complaints, Southwest sold the blood product to the treating hospital, which in turn sold it to the plaintiffs. The blood bank and its employees never saw the recipients of the blood product or had any contact whatsoever. Neither the blood bank nor any of its employees had any knowledge or information about the recipients' medical conditions. Southwest played no role in determining the nature of the plaintiff patients' illnesses, did not treat those patients, and did not attend to the personal needs of those patients. The blood bank simply did not deal with the recipient patients, and the Second District's extended discussion of Florida statutes and regulations does not alter the relationship between the patients and the blood bank or otherwise metamorphose the blood bank's activities into "diagnosis, treatment, or care." Although there may be statutes and regulations governing the internal operations of blood banks, as to the specific plaintiffs in this case, Southwest was merely the supplier of a product.
Southwest concedes that a plaintiff would have four years to sue a supplier of *1188 drugs or other medical products under the ordinary negligence statute of limitations. See § 95.11(3)(a), Fla. Stat. (1989). Southwest maintains, however, that because there is an inherent difference in the "product" supplied by blood banks versus other suppliers of medical equipment or drugs, the two should be treated differently. We find no basis justifying such differentiation.
Even if we accept for the sake of argument that blood banks do not "manufacture" blood as other suppliers manufacture drugs or equipment, this fact does not answer the question of whether blood banks are included within the medical malpractice statute of limitations. Once again, a plain reading of section 95.11(4)(b) reveals no indication that the distinction between blood and other medical products has any legal significance. Thus, Southwest's argument merely begs the question.[2]
Southwest nonetheless argues that a legislative intent to include blood banks under section 95.11(4)(b) can be discerned when the statutory provisions are read in pari materia with a policy statement in the preamble to chapter 69-157, Laws of Florida. That policy statement notes that blood banks provide a "service [that] is an intricate part of the practice of medicine." Ch. 69-157, at 718 (preamble), Laws of Fla. Thus, Southwest contends that the legislature meant to include the blood bank's "medical services" within the definition of "diagnosis, treatment, or care" when it enacted the limitations statute.
This argument fails for several reasons. First, it ignores the plain words of the statute, and as we have noted, only when a statute is ambiguous will we attempt to divine the legislative intent from sources extrinsic to the statutory language. Having found the statutory language should be accorded its plain meaning, we need go no further. Even if further examination were warranted, however, we would find little support for Southwest's conclusion.
First, chapter 69-157 has nothing to do with either medical malpractice or the statute of limitations. Rather, it created a "blood shield" statute within Florida's Uniform Commercial Code for the purpose of eliminating actions for strict liability against blood banks. See § 672.316(5), Fla. Stat. (1989). Section 672.316(5) was enacted to limit the Uniform Commercial Code warranties in the context of the sale of blood by declaring such a sale to be a "service."[3] There is no evidence to suggest that the legislature intended this legal fiction (that selling blood is a "service" rather than a "sale") to apply in any other context.
Moreover, even if the legislature was making a broad policy statement that blood banks provide a "medical service," the plain wording of section 95.11(4)(b) indicates that the legislature intended for the shorter limitations period to apply only to a narrow class of medical services. The statute of limitations does not speak to all medical services, but only to "diagnosis, treatment, or care" by a health care provider. Had the legislature intended a broader coverage, it would have used the "medical services" language from the chapter 69-157 preamble. Consequently, the very paragraph on which Southwest relies to prove it comes within section 95.11(4)(b) more accurately suggests that it is not providing the type of care covered by the limitations statute.
*1189 Finally, even if the terms "diagnosis," "treatment," and "care" were ambiguous, we would be constrained under the rule requiring ambiguity to be construed in favor of the longer limitations period. Accordingly, we conclude that the medical malpractice statute of limitations under section 95.11(4)(b), is inapplicable in this case because the allegations of negligence against Southwest do not "aris[e] out of any medical, dental, or surgical diagnosis, treatment, or care."
Although our determination of the first issue is dispositive of this case, Southwest has argued that under other factual scenarios, a blood bank could render "diagnosis, treatment, or care" to a blood recipient. Consequently, our disposition thus far would be controlling in cases where the blood bank was merely a supplier of blood, but not where the facts alleged supported the conclusion that the blood bank did not merely supply blood, but actually provided diagnosis, treatment, or care. In those cases, the statute's applicability would depend on whether the blood bank also met the second requirement of section 95.11(4)(b): that the diagnosis, treatment, or care be rendered by a "provider of health care."
The Second District concluded that blood banks are health care providers, relying on a statutory definition formerly found in section 768.50(2)(b), Florida Statutes (1985) (repealed 1986). As the Second District noted, section 766.102, Florida Statutes (1989), defines the standards of recovery in medical malpractice actions. Subsection (1) incorporates by reference the definition of health care provider found in section 768.50(2)(b), which included blood banks. The Second District thus reasoned that the legislature specifically identified the entities that would be classified as health care providers for purposes of medical malpractice actions. Silva, 578 So.2d at 505.
We find this reasoning flawed in several respects. In addition to the fact that section 768.50(2)(b) addressed collateral sources of indemnity, and not medical malpractice, that statute was repealed in 1986. See ch. 86-160, § 68, Laws of Fla. The current collateral source statute does not contain the definition on which Southwest now relies. See § 768.77, Fla. Stat. (1989).
Perhaps more important, not only does the provision upon which Southwest relies not exist today, it did not exist when the medical malpractice statute of limitations was enacted. Section 95.11(4)(b) was enacted by the legislature in 1975, see chapter 75-9, section 7, Laws of Florida, two years prior to the enactment of the definition found in section 768.50(2)(b). See ch. 77-64, § 7, Laws of Fla. Thus, the legislature could not have been thinking of the definition in that section when it enacted the limitations statute. See Brown v. St. George Island, Ltd., 561 So.2d 253, 256 (Fla. 1990) (rejecting that a subsequently enacted statute could be used to define a term in a preexisting statute).
We can find no indication that the legislature intended for blood banks to be considered "providers of health care" for purposes of the medical malpractice statute of limitations. Nor do we find it permissible generally to construe that term broadly. In the absence of clear legislative intent to the contrary, we are not at liberty to construe that term so as to deprive plaintiffs of their causes of action. See Baskerville-Donovan.
Accordingly, we find the Second District erred in its conclusion that Southwest was a "provider of health care" that rendered "diagnosis, treatment, or care" to the plaintiffs who received its blood product. We therefore approve the decision in Durden, quash the opinions in Silva and Smith, and remand for further proceedings.
It is so ordered.
SHAW, C.J., and McDONALD, KOGAN and HARDING, JJ., concur.
GRIMES, J., concurs in part and dissents in part with an opinion, in which McDONALD, J., concurs.
OVERTON, J., dissents.
GRIMES, Justice, concurring in part, dissenting in part.
I concur that the medical malpractice statute of limitations is inapplicable in this *1190 case because the allegations of negligence against Southwest do not "aris[e] out of any medical, dental or surgical diagnosis, treatment, or care." § 95.11(4)(b), Fla. Stat. (1991). However, I do believe that Southwest is a "provider of health care" as contemplated by the statute of limitations for medical malpractice. Id.
The medical malpractice limitations statute, section 95.11(4)(b), does not define "any provider of health care." However, section 766.102(1), Florida Statutes (1991), which sets the standards for recovery in medical malpractice actions, refers to the "negligence of a health care provider as defined in section 768.50(2)(b)." The latter section was enacted in the same bill[4] as the predecessor to section 766.102[5] and defined health care providers to include blood banks. The fact that section 768.50 was repealed in 1986 does not invalidate the reference to that statute because as noted by the 1989 statutory reviser to section 766.102 "generally a specific cross-reference is unaffected by subsequent amendments to or repeal of the statute. See Preface, supra p. viii."[6]
Statutes of limitations are defenses to various causes of action. The legislature has defined who is a health care provider and thereby subject to the medical malpractice standards of care; it follows that the definition of health care provider for purposes of the statute of limitations should be the same. When the medical malpractice statute of limitations was passed in 1975, the legislature did not specify whether or not blood banks were health care providers. However, it would be anomalous to conclude that when the legislature passed the predecessor to section 766.102 in 1977 it intended blood banks to be a health care provider subject to the medical malpractice standard of care and yet at the same time be subject to a different nonmedical malpractice statute of limitations because it was not a health care provider.
McDONALD, J., concurs.
NOTES
[1] We have jurisdiction pursuant to article V, section 3(b)(3), Florida Constitution.
[2] We also note that all the testing and processing by the blood bank is performed on the donated blood. Thus, the testing and processing is performed on someone else's blood, not on the ultimate recipient or on the recipient's blood.
[3] Section 672.316(5), Florida Statutes (1989), provides:

The procurement, processing, storage, distribution, or use of whole blood, plasma, blood products, and blood derivatives for the purpose of injecting or transfusing the same, or any of them, into the human body for any purpose whatsoever is declared to be the rendering of a service by any person participating therein and does not constitute a sale, whether or not any consideration is given therefor; and the implied warranties of merchantability and fitness for a particular purpose are not applicable as to a defect that cannot be detected or removed by a reasonable use of scientific procedures or techniques.
[4] Ch. 77-64, Laws of Fla.
[5] § 768.45(1), Fla. Stat. (1977).
[6] Page viii of the Preface to the official 1989 Florida Statutes explains:

Cross-references.  Legislative enactments frequently incorporate portions of the Florida Statutes by reference. A cross-reference to a general body of law (without reference to a specific statute) incorporates the referenced law and any subsequent amendments to or repeal of the referenced law. In contrast, as a general rule, a cross-reference to a specific statute incorporates only the language of the referenced statute as it existed at that time, unaffected by any subsequent amendments to or repeal of the incorporated statute. See Overstreet v. Blum, 227 So.2d 197 (Fla. 1969); Hecht v. Shaw, 112 Fla. 762, 151 So. 333 (1933); Van Pelt v. Hilliard, 75 Fla. 792, 78 So. 693 (1918); and State ex rel. Springer v. Smith, 189 So.2d 846 (Fla. 4th DCA 1966).