Mr. David L. Wilcox Attorney at Law 452 Pleasant Grove Road Inverness, Florida 34452
Dear Mr. Wilcox:
On behalf of the City of Dunnellon you ask substantially the following question:
What constitutes a change in "use" of a building requiring enforcement of minimum access requirements in s. 553.48, F.S.
In sum:
A change in "use" requiring enforcement of the minimum access requirements in s. 553.48, F.S., occurs when a tenant or owner obtains a zoning change for the subject building.
You state that building inspectors and code enforcement officers in various cities have differing interpretations of the term "use" for purposes of applying the minimum access requirements. Some equate a change in use with a change in occupancy, while others apply the minimum requirements when there is a different occupational license issued for a space. Initially, I would note that effective October 1, 1993, the accessibility requirements of the Americans with Disabilities Act of 1990,[1] will be incorporated into the law of this state.[2] The current state law, Part V, Ch. 553, F.S. (1991), F.S., will be substantially amended, with specific sections pertinent to your inquiry repealed, as of October 1, 1993.[3] Section 553.48(1), F.S., currently in effect,[4] provides:
The accessibility standards adopted herein shall be applicable to all new construction, including factory-built buildings, substantial improvements, alterations, additions, and changes in occupancy as follows:
(a) All new construction except as exempt herein.
(b) Existing buildings which are substantially improved shall be made to comply with the provisions of this part for new construction.
(c) Each element or space of a building or facility that is altered shall comply to the extent it is altered with the applicable provisions of American National Standards Institute A117.1-1986 unless structurally impracticable.
(d) These provisions shall apply to buildings and facilities designated as historic structures that undergo alterations or a change in use groups.
(e) When the use of the building changes, only the doors, entrances, floors, exits, and required public toilet rooms must conform to the requirements of this section. (e.s.)
In construing a statute which is clear and unambiguous, the plain meaning of the statute must first be considered.[5] The word "use," however, is not defined for purposes of the statute. Nor has s. 553.48, F.S., been judicially interpreted to provide guidance in this matter.
Absent a statutory definition of a word used in legislation, it is assumed that the Legislature knew the plain and ordinary meaning of the word when it was included in the statute.[6] The word "use" is commonly defined as "a particular service or end: purpose; object; function."[7] Given this definition, it remains unclear to what extent a change of use must occur to trigger the minimum access requirements of the act. When a statute is not clear on its face, such that the language is inescapably ambiguous, legislative history of the statute may be reviewed in order to clarify the Legislature's intent.
In this instance, the initial consideration of House Bill 543,[8]
included a discussion as to what constituted a change in use or occupancy mandating the requirements of s. 553.48, F.S. In response to whether a change in occupancy by one tenant moving out and another moving in would subject the building to the minimum requirements of the act, it was stated that "only if a tenant accomplishes a zoning change" would there be a change in use or occupancy for purposes of the act.[9] This discussion was expanded by citing the occupancy groups in building codes, such as residential, business, mercantile and hazardous storage. It was clarified, for example, that if there is a change from an office to a commercial facility or from a residential to an office, there would be a change in occupancy. However, a change of ownership, without a change in zoning classification, does not require the imposition of the minimum requirements of the act.[10]
Accordingly, it would appear that a change in occupancy or the issuance of a new occupational license does not constitute a change in use or occupancy requiring enforcement of the minimum access requirements in s. 553.48, F.S. A change of use or occupancy which would require the application of the minimum accessibility requirements of the act occurs only when a tenant or owner obtains a zoning change for the subject building.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tls
[1] Public Law No. 101-336, 42 U.S.C. ss. 12101, et seq.
[2] See, Ch. 93-183, Laws of Florida.
[3] While s. 553.48, F.S., will be repealed effective October 1, 1993, s. 553.504(13), F.S., as created by Ch. 93-183, Laws of Florida, provides:
Notwithstanding the provisions of the guidelines, when the use of a building, structure, or facility is changed or is altered the following shall apply in required restrooms:
(a) accessible water closet seats shall be at a height of not less than 19 inches and not more than 20 inches, measured by the vertical distance from the finished surface of the floor to the top of the seat.
(b) A grab rail shall be installed at a height of 33 inches, measured by the vertical distance from the finished surface of the floor to the top of the rail, with an allowable variation of not more than 0.5 inches. (e.s.)
[4] Section 4, Ch. 93-183, Laws of Florida, repeals s. 553.48, F.S., effective October 1, 1993.
[5] See, Silva v. Southwest Florida Blood Bank, Inc.,601 So.2d 1184, 1187 (Fla. 1992).
[6] See, Reed By and Through Lawrence v. Bowen, 503 So.2d 1265,1267 (2 D.C.A. Fla., 1986).
[7] Webster's Third New International Dictionary 2523 (unabridged ed. 1981).
[8] Committee Substitute for Committee Substitute for House Bill 543 was the House of Representatives' version of CS/SB 1441. The Senate bill was subsequently substituted for CS/CS/HB 543, on May 30, 1989. The language in CS/SB 1441 was substantially similar to that contained in CS/CS/HB 543. Committee Substitute for Senate Bill 1441 was signed by the Governor on June 20, 1989, becoming Ch. 89-97, Laws of Florida.
[9] House of Representatives Community Affairs Oversight Subcommittee, April 17, 1989, Audio Tape.
[10] Id.