778 So.2d 1030 (2001)
Christopher BELL and Shams Bell, Appellants,
v.
INDIAN RIVER MEMORIAL HOSPITAL, Appellee.
No. 4D00-1244.
District Court of Appeal of Florida, Fourth District.
February 7, 2001.
*1031 Allen R. Seaman of Stafford & Seaman, P.A., Lake Worth, for appellants.
Jennifer L. Phillips and Janet W. Adams of Hill, Reis, Adams, Hall & Schieffelin, P.A., Orlando, for appellee.
LABARGA, JORGE, Associate Judge.
Christopher Bell and Shams Bell appeal the trial court's order dismissing their complaint with prejudice because their claims were barred by the statute of limitations. We reverse and remand.
On July 10, 1995, appellant, Shams Bell, entered Indian River Memorial Hospital (Hospital) where she gave birth to a premature stillborn baby. Following the delivery, the deceased child was taken to the pathology department of the hospital for the purpose of performing an autopsy. According to appellant, she made repeated requests to hospital personnel, prior to and after the autopsy, that the child's remains be returned to her after the autopsy for funeral services and a proper burial. When the child was not returned to her, the appellant inquired for several days about the child. Ultimately, appellant learned that subsequent to the performance of the autopsy, the child's remains were disposed of in a manner unknown to the Hospital.
On October 7, 1999, appellants filed their First Amended Complaint alleging negligent mishandling of a dead body and outrageous infliction of emotional distress by reckless misconduct.[1] Appellants alleged that they had a right under Florida law to request and receive their deceased child's remains in order to arrange for burial and verbally made their intentions known that they wanted the remains of their child returned to them following the autopsy. The first amended complaint further alleged that the hospital intentionally, recklessly, and/or with willful and wanton disregard, disposed of the child's remains in total disregard for the parents' wishes and in contravention of section 470.0255, causing emotional pain from being denied the right to perform a funeral and burial.
The hospital moved to dismiss the amended complaint on various grounds, including that appellants' allegations constituted a claim for medical malpractice because the incident arose out of the rendering of, or the failure to render, medical care or services. The hospital argued that "[o]ne cannot separate the disposal of fetal remains from the handling of the fetus *1032 during the prior delivery and autopsy. The alleged improper disposal which occurred in this case was only as a result of previous and inextricably intertwined medical care and diagnosis which was provided both to Shams Bell and her fetus." Thus, the Hospital maintained that appellants' claims fell squarely within the definition of a claim for medical malpractice as defined by section 95.11(4)(b), Florida Statutes.
The trial court granted the Hospital's motion to dismiss with prejudice. In so ruling, the trial court offered the following reasoning:
In my view Defendant's performance of an autopsy and subsequent handling of the fetus clearly are actions which arise in conjunction with rendering medical diagnosis and services by a healthcare provider. Since Plaintiffs admit they have not complied with the presuit requirements of Section 766.101, Fla. Stat., and have filed this action beyond the limitations of Section 95.11(4)(b), Fla. Stat., this action must be dismissed with prejudice.
A motion to dismiss tests whether the plaintiff has stated a cause of action. See Rohatynsky v. Kalogiannis, 763 So.2d 1270, 1272 (Fla. 4th DCA 2000). Because a ruling on a motion to dismiss for failure to state a cause of action is an issue of law, it is reviewable on appeal by the de novo standard of review. See Sarkis v. Pafford Oil Co., 697 So.2d 524, 526 (Fla. 1st DCA 1997); see also Gortz v. Lytal, Reiter, Clark, Sharpe, Roca, Fountain & Williams, 769 So.2d 484 (Fla. 4th DCA 2000). When determining the merits of a motion to dismiss, the trial court's consideration is limited to the four corners of the complaint, the allegations of which must be accepted as true and considered in the light most favorable to the nonmoving party. See Gladstone v. Smith, 729 So.2d 1002, 1003 (Fla. 4th DCA 1999), cause dismissed, 773 So.2d 55 (Fla.2000); Burtman v. Technical Chems. & Prods., Inc., 724 So.2d 672, 673 (Fla. 4th DCA 1999).
Appellants are the parents of the deceased child whose remains were lost or destroyed. The appellants did not allege in their complaint that the hospital was negligent in the delivery of their child, in the performance of the autopsy on the deceased child, or that the hospital or physicians rendered improper medical diagnosis, treatment or care to the mother or the deceased child.[2]
Section 95.11(4)(b), Florida Statutes (1995), provides that an "`action for medical malpractice' is defined as a claim in tort or in contract for damages because of the death, injury, or monetary loss to any person arising out of any medical, dental, or surgical diagnosis, treatment, or care by any provider of health care." Similarly, section 766.106(1)(a), Florida Statutes (1995), which pertains to the presuit notice *1033 requirements for medical malpractice claims, defines a claim for medical malpractice as "a claim arising out of the rendering of, or the failure to render, medical care or service."
In Silva v. Southwest Florida Blood Bank, Inc., 601 So.2d 1184 (Fla.1992), the Florida Supreme Court considered the issue of when an action may be deemed to arise out of medical diagnosis, treatment or care and whether such diagnosis and treatment was rendered by a healthcare provider so as to fall within the scope of section 96.11(4)(b). In resolving this issue, the court reaffirmed that in construing a statute, words must be given their plain and ordinary meaning. See id. at 1186. The court, in considering the applicability of section 95.11(4)(b), explained:
First, there is no ambiguity to clarify in the words "diagnosis," "treatment," or "care," and we find that these words should be accorded their plain and unambiguous meaning. In ordinary, common parlance, the average person would understand "diagnosis, treatment, or care" to mean ascertaining a patient's medical condition through examination and testing, prescribing and administering a course of action to effect a cure, and meeting the patient's daily needs during the illness. This parallels the dictionary definitions of those terms. According to Webster's Third International Dictionary (1981), "diagnosis" means "the art or act of identifying a disease from its signs and symptoms." Id. at 622. "Treatment" means "the action or manner of treating a patient medically or surgically." Id. at 2435. "Care" means "provide for or attend to needs or perform necessary personal services (as for a patient or child)." Id. at 338. Likewise, in medical terms, "diagnosis" means "[t]he determination of the nature of a disease." Stedman's Medical Dictionary 428 (25th ed.1990). "Treatment" means "[m]edical or surgical management of a patient." Id. at 1626. And "care" means "the application of knowledge to the benefit of ... [an] individual." Id. at 249.
Id. at 1187.
Silva involved a claim against a blood bank arising out of a tainted blood transfusion which resulted in an individual being infected with HIV. The court, in holding that the medical malpractice statute did not apply, concluded that the blood bank rendered no diagnosis, treatment or care to the injured party where neither the blood bank nor its employees had any knowledge or information about the recipients' medical conditions. See also J.B. v. Sacred Heart Hosp. of Pensacola, 635 So.2d 945 (Fla.1994)(claim of patient's brother who became HIV positive after transporting patient to another hospital at the request of the hospital without telling him that the patient had AIDS and without giving him instructions on the patient's heparin lock was not a claim for medical malpractice for purposes of the two-year statute of limitations or presuit notice and screening requirements).
In Lynn v. Mount Sinai Medical Center, Inc., 692 So.2d 1002 (Fla. 3d DCA 1997), the Third District concluded that the hospital did not engage in "medical service" within the meaning of the medical malpractice statute of limitations by collecting and shipping a county employee's urine specimen to an independent laboratory for employment-related drug testing where the hospital only functioned as an intermediary and did not engage in any medical skill or judgment. In so holding, the Third District explained that "[m]erely because a wrongful act occurs in a medical setting does not necessarily mean that it involves medical malpractice." Id. at 1003. "The wrongful act must be directly related to the improper application of medical services, and the use of professional judgment or skill." Id.; see also O'Shea v. Phillips, 746 So.2d 1105, 1108 (Fla. 4th DCA 1999) review denied, 767 So.2d 459 (Fla. 2000)(where the nub of the plaintiff's claim is a theory of negligence apart from medical malpractice, there is no obligation to *1034 comply with Chapter 766 notice and screening requirements); Liles v. P.I.A. Medfield, Inc., 681 So.2d 711, 712 (Fla. 2d DCA 1995) (not every wrongful act by a health care provider amounts to medical malpractice); Stackhouse v. Emerson, 611 So.2d 1365 (Fla. 5th DCA 1993)(plaintiff was entitled to plead claims of intentional torts unrelated to, or independent of, medical diagnosis, care or treatment).
In this case, hospital personnel did not engage in any medical skill or judgment in the disposition of the child's remains. They were only expected to perform the ministerial act of transporting the child's remains back to the parents following the conclusion of the autopsy. Given the rationale in Lynn and the Florida Supreme Court's construction of section 95.11(4)(b) in Silva, the wrongful disposal of the deceased patient did not fall within the plain ordinary meaning of diagnosis, treatment or care. The fact that the disposal of the child's remains took place in the hospital does not mean that it constituted medical malpractice. See Lynn, 692 So.2d at 1003.
Accordingly, because we have concluded that the disposal of the child's remains does not constitute medical malpractice, the trial court's application of the medical malpractice two-year statute of limitations was error. Accordingly, we reverse and remand to the trial court for further proceedings.
REVERSED AND REMANDED.
STEVENSON and GROSS, JJ., concur.
NOTES
[1] Appellants' initial complaint was dismissed with leave to amend. As a basis for dismissal, the trial court stated that it was "not clear from the allegations in the Complaint whether Plaintiffs are alleging an action for medical malpractice or for negligent handling of a dead body or intentional or negligent infliction of emotional distress." The trial court added, "[t]he court makes no ruling as to whether the two-year statute of limitations for medical malpractice applies or whether the four-year statute of limitations applies to other negligent actions because it is not clear from the Complaint whether this is a suit for medical malpractice or other negligent or an intentional tort."
[2] Appellants' amended complaint alleged the following in relevant part:

6. After the death of the Plaintiff's baby girl, the infant was transferred to the pathology department of the hospital for the purpose of performing an autopsy thereon.
7. Prior to and after delivery of her deceased child to the hospital personnel for the purpose of an autopsy, Plaintiff, Shams Bell, made repeated requests that the child's remains be returned to her for proper funeral and burial services, consistent with Plaintiff's religion, and, after her initial request for the return of her child, then made repeated requests as to the status of the autopsy and the return of her child for proper burial, together with inquiry as to why the autopsy was allegedly taking a long time (days), and why her child was not being returned to her.
8. For a period of hours and days, Plaintiff was assured by hospital personnel that her baby would be returned to her, but no one was able to explain to the Plaintiff the reasons for the delay.
9. Subsequent to performing an autopsy on the aforesaid baby girl, Defendant, instead of making arrangements for delivery of the child's remains to her parents for proper funeral and burial, merely disposed of the child's remains in a place and manner that, to the date of this Amended Complaint, has yet to be explained to Plaintiffs.