911 So.2d 125 (2005)
Ricardo MEROVICH, Silvia Merovich, Potata's Inc., and Welldone Invest and Trade Corp., Appellants,
v.
Julian HUZENMAN, Gregorio Huzenman, Guillermo Bermann, Daniel J. Serber, Feelgood One, Inc., LLC., Venquest Group, LLC., and Serber & Associates, P.A., Appellees.
No. 3D04-636.
District Court of Appeal of Florida, Third District.
March 30, 2005.
Rehearing Denied October 12, 2005.
*126 Colodny, Fass, Talenfeld, Karlinsky & Abate, and Maria Elena Abate, Fort Lauderdale and Sandy P. Fay, for appellants.
Philip D. Parrish; Heller and Chames, Miami, for appellees.
Before COPE, GREEN, and WELLS, JJ.
WELLS, Judge.
Investors Ricardo and Silvia Merovich and their Florida corporations, Potata's Inc., and Welldone Invest and Trade Corp., appeal a final order dismissing their multi-count complaint against Julian Huzenman, Gregorio Huzenman, and Guillermo Bermann (collectively "The Cousins") and Feelgood One, Inc., LLC, and Venquest Group, LLC, two limited liability corporations jointly owned by all of the parties. The Meroviches claim that The Cousins fraudulently induced them to invest in Feelgood and Venquest causing them unspecified damage and entitling them to rescission of the operating agreements establishing these entities. They also claim that The Cousins breached their fiduciary duties by intentionally concealing facts and failing to provide information, and that Potata's and Welldone, as members of Feelgood and Venquest, had a statutory right to inspect Feelgood's and Venquest's records. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.
The Meroviches allege that early in 2002, they were approached by The Cousins about investing $300,000 in the purchase of Granny Feelgood's, a downtown Miami restaurant. For that sum, the Meroviches would acquire a 25% interest in the proposed business opportunity. According to the Meroviches, The Cousins induced them to join in the plan by representing that each cousin would likewise make a $300,000 contribution and acquire a 25% interest in the proposed venture.
In February 2002, prior to reviewing any written documents regarding this investment, the Meroviches, who live in Argentina, sent $300,000 to the Miami attorney who was representing all of the parties to this investment. In mid-February, Venquest and Feelgood, the two limited liability corporations that were going to own and operate Granny Feelgood's,[1] were formed, and using part of the Meroviches' money, Venquest purchased Granny Feelgood's as contemplated.[2]
Four months later, the Meroviches met with the Miami attorney who represented all of the parties in the formation of Venquest and Feelgood to execute the Venquest and Feelgood operating agreements. Despite the fact that both agreements clearly stated that only the Meroviches *127 were contributing capital to the venture in exchange for their 25% interestan alleged blatant contradiction of The Cousins' prior representations regarding capital contributionsthe Meroviches executed the agreements.[3]
The Meroviches subsequently brought suit against The Cousins and the two limited liability corporations[4] seeking damages and rescission based on The Cousins' alleged fraudulent misrepresentations (Counts I and VI, respectively). They also sought damages for The Cousins' alleged breach of fiduciary duties and sought to inspect Venquest's and Feelgood's books and records (Counts II and V, respectively). All four counts were dismissed with prejudice. As to all but Counts II and V, we affirm.
We review the dismissal order de novo, Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc., 842 So.2d 204, 206 (Fla. 3d DCA 2003), and take the allegations of the complaint as true and view them, as we must, in a light most favorable to the Meroviches. See Id. (when determining the merits of a motion to dismiss, "consideration is limited to the four corners of the complaint, the allegations of which must be accepted as true and considered in the light most favorable to the nonmoving party.") (quoting Bell v. Indian River Mem. Hosp., 778 So.2d 1030, 1032 (Fla. 4th DCA 2001)).
Doing so, we nonetheless conclude that the claim for damages for fraudulent inducement (Count I), was properly dismissed with prejudice. Execution of a contract with knowledge that an initial agreement was fraudulently procured constitutes a waiver of claims based on the previous fraud. See, e.g., Benn v. Key West Propane Gas Corp., 72 So.2d 910, 913 (Fla.1954) (confirming that execution of a contract with knowledge that an initial agreement was fraudulently procured "was a waiver of any claim based on the previous fraud"); Harpold v. Stock, 65 So.2d 477, 478 (Fla.1953) (same). The Meroviches' execution of the Venquest and Feelgood operating agreements knowing, contrary to what The Cousins allegedly had previously represented, that The Cousins were not contributing any capital, constituted a waiver of the fraud claim for damages, justifying dismissal of Count I with prejudice. Following this conclusion, Count VI of the complaint seeking rescission as a remedy for The Cousins' allegedly fraudulent representations was likewise properly dismissed with prejudice.
The trial court also properly dismissed the Meroviches' breach of fiduciary duty claim against The Cousins (Count II), but should not have done so with prejudice. This count is predicated on section 608.4225 which, in pertinent part, imposes a duty of loyalty and care on managers and managing members to (1) account for and hold as trustee "any property, profit, or benefit derived in the conduct or winding up of the limited liability company or derived from a use ... of limited liability company property"; (2) refrain from dealing with the company "on behalf of a party having an interest adverse" to the company; and, (3) refrain from competing with the company in the conduct of company business "before the dissolution" of the company. § 608.4225(1), Fla. Stat. (2003). *128 The complaint claims that The Cousins violated these provisions by failing to provide information as required by section 608.4101 and by failing to account for the revenues and profits of these entities.[5]
Section 608.4101, imposes duties on limited liability companies, entities which were not joined in this count, not on the managers individually. See § 608.4101, Fla. Stat. (2003). However, the Meroviches' allegation that the manager-Cousins had wrongfully retained the revenues and profits of the limited liability companies might support a section 608.4225 claim if appropriately pled. Dismissal of the claim with prejudice was, therefore, unwarranted.
We also agree with the Meroviches that the trial court erred in dismissing the claim to inspect records (Count V). Florida's Limited Liability Corporation statute, section 608.4101, Florida Statutes (2004), provides in pertinent part:
(3) A limited liability company shall furnish to a member, and to the legal representative of a deceased member or member under legal disability:
(a) Without demand, information concerning the limited liability company's business or affairs reasonably required for the proper exercise of the member's rights and performance of the member's duties under the operating agreement or this chapter; and
(b) On demand, other information concerning the limited liability company's business or affairs, except to the extent the demand or the information demanded is unreasonable or otherwise improper under the circumstances.
The allegations of the complaint clearly state a cause of action to enforce the Meroviches' (and their corporations') rights to obtain information from Venquest and Feelgood. This claim should not, therefore, have been dismissed.
Accordingly, we affirm dismissal of Counts I and VI of the second amended complaint. We reverse dismissal of Count V and reinstate that count. We also reverse dismissal of Count II for the limited purpose of according the Meroviches leave to amend that count to state a cause of action, if possible, under section 608.4225(1)(a)1 of the Florida Statutes.
NOTES
[1] According to the operating agreements attached to the complaint, Venquest was formed to own the "intellectual property" which includes the trade name "Granny Feelgood." Feelgood was formed to operate the restaurant.
[2] Pursuant to written authorization from the Meroviches, the balance of their funds was distributed to The Cousins.
[3] The Meroviches maintain that despite misgivings, they signed the agreements on the advice of counsel.
[4] The Meroviches amended their complaint to add the attorney who consummated the transaction and his professional association. Since these parties did not attack the sufficiency of the complaint, these claims remain pending.
[5] While The Cousins argue that this count should be dismissed because it failed to allege that The Cousins were managers or managing members, the operating agreements attached to the complaint demonstrate their status as "member managers." Thus dismissal would not be merited on this basis. See Harry Pepper & Assoc. v. Lasseter, 247 So.2d 736 (Fla. 3d DCA 1971), (noting that in considering a motion to dismiss, the "trial court was required to consider the exhibit ... attached to and incorporated in the ... complaint," and citing to Florida Rule of Civil Procedure 1.130(b), providing that "[a]ny exhibit attached to a pleading shall be considered part thereof for all purposes").