DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**PICTURE IT SOLD PHOTOGRAPHY, LLC.,**
a Florida limited liability company,
Appellant,

v.

**SCOTT BUNKELMAN,**
Appellee.

No. 4D19-1427

[January 8, 2020]

Appeal of a nonfinal order from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Lisa S. Small, Judge; L.T. Case No. 50-2018-CA-015988-XXXX-MB.

Gene D. Lipscher and George P. Ord of Gene D. Lipscher, P.A., Jupiter, for appellant.

Bennett S. Cohn of Law Offices of Bennett S. Cohn, West Palm Beach, for appellee.

CONNER, J.

Picture It Sold Photography, LLC ("Employer") appeals the denial of its motion for a temporary injunction to enforce a non-solicitation and non-compete agreement against Scott Bunkelman ("Contractor"), an independent contractor formerly employed by Employer. Because the trial court failed to properly apply the presumption of irreparable harm flowing from violations of the agreement and improperly determined that evidence in support of a fraudulent inducement affirmative defense precluded a temporary injunction, we reverse and remand for the entry of a temporary injunction.

*Background*

Employer is a business that provides photography and videography services for real estate professionals. In October 2016, Contractor was hired by oral agreement to provide photography services as an independent contractor for Employer. The following December, the terms

of Contractor's employment were memorialized in a written independent contractor agreement, which included the following non-solicitation and non-compete provisions:

> *Independent Contractor agrees that he/she will not directly or indirectly do or attempt to do any of the following during Independent Contractor's engagement* (except in the faithful performance of his/her duties for the Company) *or during the period of two years after the date of termination of Company's engagement of Independent Contractor,* within the Florida counties of Palm Beach, Broward, Martin and St. Lucie: *solicit,* employ, engage, hire, *call on, compete for,* sell to, divert, *or take away any customer,* supplier, endorser, advertiser or employee, agent, subagent, or independent contractor of Company or aid, assist or plan for anyone else to do so; divert or aid, assist or plan for others to divert from the Company any past or pending sale or exchange of any goods, product or service; entice, aid or cooperate with others in soliciting or enticing any employee, agent, subagent or independent contractor of the Company to leave, modify or terminate its relationship with the Company; *participate in planning for any new or existing business that is or would be similar to the business of the Company or that does or would compete with the Company or solicit customers of the Company*; accept any other employment or engagement that would call upon Independent Contractor to use, disclose or base judgments on the Company's trade secrets or confidential information or to utilize the Company's customer goodwill in making sales or other advantageous business relations for a business similar to or in competition with the Company's business; *compete against the Company for customers,* suppliers, employees, agents or independent contractors; or own, manage, be employed by, be engaged by, work for, consult for, be an officer, director, partner, manager, employee, independent contractor or agent of, advise, represent, *engage in, or carry on any business which is similar to the type of business engaged in by the Company at this time or on the date of termination of Independent Contractor's engagement and which competes with the Company.*

(emphases added). The initial term of the agreement was one year, with an automatic renewal provision for additional one-year periods, unless terminated by either party by written notice. An addendum to the written

agreement provided that Contractor would be compensated pursuant to a fee schedule.

Upon discovering that Contractor was violating the agreement, Employer sued him for violating the restrictive covenants in the agreement, seeking injunctive relief and damages. Employer also filed an emergency motion for temporary injunction. Contractor filed an answer, asserting several affirmative defenses and a counterclaim against Employer.

At the temporary injunction hearing, Contractor admitted that he was unsatisfied with his earnings and began providing his services for some of Employer's customers on the side without Employer's knowledge or consent. Contractor's testimony established that when confronted by Employer prior to suit, he admitted to working on the side. He further admitted that he never gave a written notice of termination of the agreement, but claimed he stopped providing independent contractor services to Employer as of December 2018. Additionally, he admitted that he had in the past and, as of the date of the hearing, continued to provide photography and video services to a few of Employer's customers.

Contractor presented testimony from some of Employer's former customers. Several customers, but not all, testified that they would not use Employer again, for reasons that had nothing to do with Contractor.

At the hearing, Contractor argued that the agreement was invalid because Employer fraudulently induced him to enter it by assuring him a $60,000 salary, which he never earned while working for Employer. He did not dispute that he was paid according to the fee schedule in the agreement. However, he testified that he could not earn a $60,000 salary because Employer did not do its part and never sent him enough business. He argued that he was fraudulently induced to enter the agreement as to the location of his work. He also argued that while negotiating the agreement, he explained to Employer that he needed to work in northern Palm Beach County due to personal family issues. He further testified that he was assured seventy-five percent of his work would be in northern Palm Beach County, but it turned out that eighty to ninety percent of the work he was given was in southern Palm Beach County and Broward County.

The court entered a written order that found the written employment agreement contained restrictive covenants that were reasonably necessary to protect Employer's legitimate business interests and that Contractor failed to prove the restraints were overbroad, overlong, or otherwise unreasonable. The trial court further found that Contractor violated the restraints while working for Employer and thereafter, and thus Employer

was entitled to the presumption of irreparable injury. Additionally, the trial court found that Contractor failed to prove the presumption was rebutted by proof of the absence of injury. However, the trial court denied Employer's motion for temporary injunction. The trial court concluded that Employer failed to demonstrate there was no adequate remedy at law because the customers Contractor solicited would not use Employer again, irrespective of Contractor's actions. Additionally, the trial court concluded that Contractor's testimony in support of his fraudulent inducement defense was "credible and unequivocal" and that Employer made fraudulent misrepresentations as to the salary Contractor would earn under the agreement and the location of his work.

Employer gave notice of appeal of the nonfinal order.

*Appellate Analysis*

The standard of review in this appeal is a hybrid: the trial court's factual findings are reviewed for abuse of discretion, and its legal conclusions are reviewed de novo. *Colucci v. Kar Kare Auto. Grp., Inc.*, 918 So. 2d 431, 436 (Fla. 4th DCA 2006).

Employer argues the trial court erred in denying its motion for a temporary injunction. Section 542.335, Florida Statutes (2018), governs the enforcement of restrictive covenants. Under section 542.335, a party seeking a temporary injunction must establish four elements: "(1) the likelihood of irreparable harm[;] (2) the unavailability of an adequate remedy at law[;] (3) a substantial likelihood of success on the merits[;] and (4) that a temporary injunction will serve the public interest." *Hilb Rogal & Hobbs of Fla., Inc. v. Grimmel*, 48 So. 3d 957, 959 (Fla. 4th DCA 2010) (quoting *Envtl. Servs., Inc. v. Carter*, 9 So. 3d 1258, 1261 (Fla. 5th DCA 2009)). The trial court found that Employer established the first and fourth elements to support a temporary injunction, but failed to establish the second and third elements.

*Unavailability of an Adequate Remedy at Law*

The trial court concluded that Employer failed to establish the unavailability of an adequate remedy at law because several former customers testified that they would not retain Employer's services again, irrespective of Contractor's actions. The trial court erred in this regard. "[T]he continued breach of a non-compete agreement threatens a former employer's 'goodwill and relationships with its customers, and nothing short of an injunction would prevent this loss.'" *TransUnion Risk & Alt. Data Sols., Inc. v. Reilly*, 181 So. 3d 548, 551 (Fla. 4th DCA 2015) (quoting

4

*DePuy Orthopaedics, Inc. v. Waxman*, 95 So. 3d 928, 939-40 (Fla. 1st DCA 2012)).

Contractor admitted at the hearing that he continues to solicit Employer's customers. While some customers testified that they would not retain Employer's services again, others who worked with Contractor still retain Employer's services as well. Additionally, the evidence shows that Contractor continues to compete against Employer for business, regardless of whether he solicits Employer's former customers. Absent an injunction, there is nothing to stop Contractor from soliciting Employer's current and prospective customers and further competing with Employer in the market.

*Substantial Likelihood of Success on the Merits*

"Evidence that an enforceable covenant not to compete was breached will support a trial court's finding of the likelihood of success on the merits." *Walsh v. Paw Trucking, Inc.*, 942 So. 2d 446, 448 (Fla. 2d DCA 2006). But the trial court must also consider any affirmative defenses. *Benemerito & Flores, M.D.'s, P.A. v. Roche*, 751 So. 2d 91, 93 (Fla. 4th DCA 1999). When an "employee introduces evidence of the employer's breach, . . . the employer must then demonstrate that it is likely to succeed on the merits of the proffered defense, as well." *Supinski v. Omni Healthcare, P.A.*, 853 So. 2d 526, 532 (Fla. 5th DCA 2003).

The trial court found Contractor breached the enforceable covenant but also found credible Contractor's testimony in support of his affirmative defense that Employer misrepresented his future earnings and ability to work mainly in northern Palm Beach County in order to induce him to enter the agreement. However, we agree with Employer's arguments that the evidence does not support the conclusion that Employer fraudulently induced Contractor to enter into the employment agreement as a matter of law for two reasons.

First, the written agreement has a provision that states the document is the entire agreement between the parties, and the agreement provides a specific schedule of services and fees. There is no provision in the agreement that supports a representation of an annual earnings amount. Moreover, by Contractor's own testimony, it was possible to earn a $60,000 salary with the agreed-upon fee schedule, but Employer allegedly did not generate enough business. The agreement itself does not promise Contractor a $60,000 salary, nor does it promise that Contractor would work primarily in northern Palm Beach County. Even assuming the salary and geographic region were promised orally, Contractor did not present

sufficient evidence to show he would likely prevail because a party cannot recover in fraud for oral misrepresentations that are later contradicted in a written contract. *See Ioannides v. Romagosa*, 93 So. 3d 431, 435 (Fla. 4th DCA 2012) (finding specific provisions in a contract detailing salary and formula for computing bonuses preclude recovery for allegedly fraudulent oral statements about potential earnings made prior to entering into the contract); *Hillcrest Pac. Corp. v. Yamamura*, 727 So. 2d 1053, 1056 (Fla. 4th DCA 1999) ("A party cannot recover in fraud for alleged oral misrepresentations that are adequately covered or expressly contradicted in a later written contract.").

Second, based on the one-year term and renewal provisions of the agreement, Contractor did not present sufficient evidence to show justifiable reliance on the misrepresentation as to salary or location of the work. It is clear that Contractor renewed the agreement by continuing to work after the first year, despite being aware of the alleged misrepresentations. "Without justifiable reliance, there can be no actionable fraud." *Hillcrest*, 727 So. 2d at 1057. In addition, as Employer argues, the evidence established a waiver of any claim of fraud in the inducement. *See Merovich v. Huzenman*, 911 So. 2d 125, 127 (Fla. 3d DCA 2005) ("Execution of a contract with knowledge that an initial agreement was fraudulently procured constitutes a waiver of claims based on the previous fraud.").

*Conclusion*

Accordingly, we determine that the trial court erred as a matter of law in concluding that Employer did not establish the unavailability of an adequate remedy at law and a substantial likelihood of success on the merits. Because Employer demonstrated that it is entitled to a temporary injunction, we reverse and remand for entry of a temporary injunction in favor of Employer which protects its interest under the restrictive covenants contained in the employment agreement. Our opinion reverses a nonfinal order and is based on the evidence presented at a temporary injunction hearing. We leave for another day the merits of a final hearing.

*Reversed and remanded with instructions.*

CIKLIN and GERBER, JJ., concur.

\*       \*       \*

**Not final until disposition of timely filed motion for rehearing.**